Anthony T. LEE et al., Plaintiffs,

United States of America, Plaintiff-Intervenor and Amicus Curiae,

v.

MACON COUNTY BOARD OF EDUCATION et al., John W. Gardner, as Secretary of Health, Education and Welfare of the United States, F. Peter Libassi, as Special Assistant to the Secretary of Health, Education and Welfare for Civil Rights and Director of the Office for Civil Rights of Health, Education and Welfare, and James R. Dunn, Attorney, United States Department of Health, Education and Welfare, Defendants.

Civ. A. No. 604–E.

United States District Court
M. D. Alabama, E. D.
July 28, 1967.

Fred D. Gray, Gray & Seay, Montgomery, Ala., and Melvyn Zarr, New York City, for plaintiffs.

Ben Hardeman, U. S. Atty., Montgomery, Ala., and St. John Barrett and Brian K. Landsberg, Attys., United States Dept. of Justice, Washington, D. C., for Department of Health, Education and Welfare.

Gordon Madison, Asst. Atty. Gen., of Alabama, and Maury D. Smith, Goodwyn, Smith & Bowman, Montgomery, Ala., for defendant State of Alabama officials.

Before RIVES, Circuit Judge, and GROOMS and JOHNSON, District Judges.

PER CURIAM:

On March 22, 1967, this Court entered its order in this case [1] permanently en-

1. Lee v. Macon County Board of Education, 267 F.Supp. 458 (M.D.Ala.1967).

joining the defendant State Board of Education, its members and the State Superintendent of Education from discriminating on the basis of race in the operation or conduct of the public schools of Alabama and requiring them to take affirmative action to disestablish all State enforced or encouraged public school segregation and more particularly requiring the State Superintendent of Education to notify certain named school systems that they were required to adopt a desegregation plan for all grades commencing with the 1967–68 school year meeting the standards embodied in a plan attached as Exhibit "A" to the decree and requiring that the State Superintendent of Education inform each of these local school systems that such plan was to be adopted within 20 days from the date of the decree and requiring, further, that the State Superintendent submit a report to this Court and all parties informing them what action had been taken by him in this connection and the results of such action.

Subsequently, as ordered by this Court, the defendant Ernest Stone as State Superintendent of Education submitted to the Court and to the parties his report as required. With this report the State Superintendent of Education submitted the desegregation plans adopted by the several school systems named in the court decree of March 22, 1967. Among these plans were plans adopted and submitted by the Lanett City school system, Lanett, Alabama. An examination of the desegregation plan promulgated and adopted by the Lanett City Board of Education reflects that said plan meets the standards embodied in the plan attached as Exhibit "A" to the court's decree. Subsequently the Lanett City school system in the implementation of its plan conducted a free choice period;

the conduct of said free choice period by the said system, according to the reports filed with this Court, meets in every respect the requirements of this Court's order. Reports filed with this Court subsequent to the filing of the plan by the Lanett School Board reflect that the Board is in the process of implementing the plan as filed insofar as its facilities, activities and other programs that are conducted or may be conducted or sponsored by the said school system are concerned. These reports as presented further reflect that the Lanett City school system is engaged in the process of, as required by the order of this Court and the plan filed by said school board, a school equalization program and, further, that said school board has taken affirmative steps to accomplish the desegregation of its school faculties in each of the schools operated by said school board effective with the 1967–68 school year.

Reports filed with this Court subsequent to the filing of this Court's order of March 22, 1967, further reflect that, with the exception of the Board of Education of Bibb County, Alabama, each of the 99 school systems listed in the order adopted a desegregation plan meeting the standards embodied in this court order and has taken affirmative steps to implement the plan as adopted as to free choice period, facilities, activities, school equalization program, and desegregation of faculties.[2]

This Court, by order of July 14, 1967, upon the oral motion of the City of Lanett School Board, made by and through its Superintendent, J. T. Greene, to the effect that the United States Department of Health, Education and Welfare, acting pursuant to Title VI of the 1964 Civil Rights Act and regulations promulgated thereunder, had terminated federal

---

2. Bibb County, upon motion of the United States and after hearing before this Court, on May 18, 1967, was formally ordered to adopt a desegregation plan meeting the requirements of the plan set forth by this Court and to fully implement said plan. The only other exception is the school system of Marengo County, Alabama, which system has substantially adopted the desegregation plan of this Court, is in the process of implementing said plan, and has requested additional time of this Court to file its report setting forth the specific steps taken by the school system and the results achieved thereby.

financial assistance to the Lanett City school system effective July 14, 1967, entered upon said date a temporary restraining order enjoining and restraining John W. Gardner, as Secretary of Health, Education and Welfare of the United States; F. Peter Libassi, as Special Assistant to the Secretary of Health, Education and Welfare for Civil Rights and Director of the Office for Civil Rights of Health, Education and Welfare, and James R. Dunn, Attorney, United States Department of Health, Education and Welfare, from terminating said federal financial assistance to the said school board and set this cause for a hearing for the purpose of determining whether the temporary restraining order should be enlarged into a preliminary and/or permanent injunction.

The issue squarely presented is whether the Department of Health, Education and Welfare, acting independently and without court approval, has the authority to terminate federal financial assistance to a school system when such school system is under a final court order, is in compliance with that order, and gives assurance to the Department of Health, Education and Welfare of compliance.

Upon a hearing of this matter, it appears that the Lanett City school system did, in fact, adopt as its plan of desegregation this Court's suggested plan, which plan was attached to the decree entered in this cause on March 22, 1967, and that subsequent to the adoption of said plan the Lanett City school system did, in fact, conduct a free choice period and otherwise implemented said desegregation plan insofar as its facilities, activities, and faculty desegregation are concerned. Further, said school board has and is taking affirmative steps to accomplish the desegregation of its school system as required by the order of this Court.

■ This Court is aware that Congress has placed upon the Department of Health, Education and Welfare and its officers, by virtue of Title VI of the 1964 Civil Rights Act, an obligation to see that federal funds and federal financial support do not go to any state-supported program—or any program for that matter—in which there is discrimination based upon race or color. This of course includes school systems. It is also recognized that the Secretary of Health, Education and Welfare and the other officers of the Department of Health, Education and Welfare in carrying out this policy are obliged to assure themselves that there is no such discrimination. However, we are cognizant of a regulation of the Department of Health, Education and Welfare approved by the President of the United States on December 3, 1964, and which therefore has the force and effect of law, 45 C.F.R. 80.4(c), which requires that with respect to an elementary or secondary school system, "assurance of compliance" as prerequisite to obtaining federal financial assistance "shall be deemed to be satisfied" if such school system is subject to a final order of a court of the United States for the desegregation of such school system and if such school system gives assurance that it will comply with such order. The records of this Court reflect that on April 15, 1967, this Court and the other parties herein involved, including the State Superintendent of Education, were advised by a representative from the United States Department of Justice (now appearing as counsel for the Department of Health, Education and Welfare) that, if the school systems named in the order of March 22, 1967, adopted this Court's plan and submitted a copy to the Department of Health, Education and Welfare together with an assurance that they would comply with said order, such would meet the Title VI requirements insofar as the Department of Health, Education and Welfare was concerned.[3]

---

3. Excerpt from the argument of Mr. St. John Barrett, Attorney, Civil Rights Division, United States Department of Justice, in open court on April 15, 1967:

"* * * The Commissioner, as Mr. Madison has pointed out, advised the ninety-nine school districts, or substantially all of them, I believe, that are named in

The evidence in this case reflects that the action now being taken by the Secretary of Health, Education and Welfare, acting through his various assistants and representatives, in terminating federal financial assistance to the Lanett City school system is based upon a determination by those officials that the Lanett City school system was not, in fact, complying with the decree of this Court. In this connection, F. Peter Libassi testified:

"Q Mr. Libassi, at about that time [on March 22, 1967, the date this Court entered its order], did the question come for your decision whether or not the Lanett City System had satisfactorily brought itself back into compliance with a respect to Title VI requirements?

A Yes, sir; that issue was presented to us at that time.

Q Did you discuss it with the members of your staff?

A Yes, sir; I did.

Q What materials were available in your Department to assist you and your staff in making that decision?

A We had available the entire file and proceeding in the Lanett City System case, including the original field reports, as well as the documents submitted by the school system which have just been entered in the record. In addition, there were statistical reports on student and faculty desegregation for the District.

Q Now, what alternative decisions were available to you at that time?

A We were faced with the decision as to whether or not there were sufficient facts before us which would warrant a finding that this District had in fact brought itself into compliance or—with the provisions of Title VI, and by that we mean the provisions of the Court's decree and the model plan. If the facts were sufficient to make a finding, we would have done what we had done in other districts in Alabama, discontinued the hearing proceeding and established—re-established the District's eligibility; if we felt the facts did not warrant such a finding, then we would take no action; we would simply not intervene or inject ourselves into the orderly administrative process which was then taking place leading toward the termination of Federal funds.

Q Are the facts now—no, I will withdraw that. What determination did you make?

A We decided that the facts did not warrant a finding that the District was in fact in compliance.

Q What was the basis for that decision?

A First, there was the continued existence of the small Negro high school of a hundred and seventy-five students, and the existence of a white high school of approximately five hundred students. In addition, we reviewed the—

\* \* \* \* \* \*

Q Had you completed your answer?

A No. In addition to the information concerning the existence of the Negro school, and compared to the size of the white school, in our judgment, in reviewing the

this Court's decree that if they adopt the plan that was appended to this Court's decree, and if they implement it in good faith, that will meet the requirements that the Commissioner of Education lays down for the receipt of Federal financial assistance. He has requested those districts, if they adopt the Court's model plan, to submit a copy to him, together with an assurance that they will comply with it. He has made it clear, I believe, that insofar as there may be differences between this Court's plan and the Commissioner's Guidelines, he will accept compliance with this Court's plan as meeting the Title VI requirements. \* \* \*"

steps that were to be taken to equalize the facility, we felt that those steps would not in fact equalize the educational opportunities available to Negro high school students in the City System, and that under the Court's decree, the appropriate steps for the District to take was the consolidation or the phasing out of the Negro high school. The School System planned certain expansion and remodeling programs at the Negro high school, which, under the decree, we felt should not have been undertaken, since they would have further entrenched and strengthened the segregation and the dual school system in Lanett City.

Q   Mr. Libassi—

A   Oh; in addition, there was a third factor—

Q   Yes, sir?

A   —and that was the low number of Negro students that had actually chosen to attend white schools in the fall, and no indication in the data as to what might be developing in the District during the next year or two, what additional steps might be taken; so for all of these reasons, it was our judgment that the District in fact was not complying with the decree of the Court and, therefore, we should not interfere in the administrative termination proceeding."

■ Under the facts now presented, this Court now specifically finds and concludes that the City of Lanett school system and the other 98 school systems listed in the order of this Court of March 22, 1967, were, when said order was entered and served, made "subject to a final order of a court of the United States for the desegregation" of such school systems within the meaning of 45

C.F.R. 80.4(c). We further find that the City of Lanett school system, as required by said regulation, has provided assurance of compliance to the Department of Health, Education and Welfare.

The argument of the Department of Health, Education and Welfare to the effect that the City of Lanett school system and the other 98 systems listed by this Court were not under a "court order" within the meaning of 45 C.F.R. 80.4(c) overlooks the real basis for the entry of this Court's statewide school desegregation order of March 22, 1967. This Court found, as a matter of fact, from evidence that was presented and formed the basis for our order of July 13, 1964,[4] that the school system throughout the State of Alabama was actually controlled by the State Board of Education, the State Superintendent of Education, and other state officials. In this connection, this Court stated:

"The evidence in this case is clear that over the years the State Board of Education and the State Superintendent of Education have established and enforced rules and policies regarding the manner in which the city and county school systems exercise their responsibilities under State law. This control relates, among other things, to finances, accounting practices, textbooks, transportation, school construction and even Bible reading. The control by the State Board of Education over the local school systems is effected and rigidly maintained through control of the finances. * * *

*     *     *     *     *     *

" * * * Furthermore, as pointed out above, there is no question that the State Board of Education of Alabama has general control and supervision of the public schools of this State." [5]

Furthermore, the argument of the Department of Health, Education and Welfare that the individual school systems are not defendants within the meaning of

4.  Lee v. Macon County Board of Education, 231 F.Supp. 743 (M.D.Ala.1964).

5.  Lee v. Macon County Board of Education, supra Note 4, 231 F.Supp. at 750–751, 756.

45 C.F.R. 80.4(c) ignores the fact that said school systems, by filing their desegregation plans with this Court as ordered, submitted to the jurisdiction of this Court. Certainly there is no question but that said school systems, including the City of Lanett system, did, by filing their desegregation plans with this Court and taking the steps that have been taken as reflected by the records of this Court to implement same, become "subject to a final order of a court of the United States for the desegregation of such school or school system" within the meaning of 45 C.F.R. 80.4(c).

■ The fact that the City of Lanett school system and approximately 34 of the other school systems listed in the March 22, 1967, order had been declared "out of compliance" by the Department of Health, Education and Welfare prior to the March 22 order does not change the fact that, with the entry of that order on March 22, 1967, each of said school systems became "subject to a final order of a court of the United States for the desegregation of such * * * school system," and upon becoming subject to a final order of a court of the United States was automatically, by reason of becoming subject to said order and agreeing to comply with same, brought back "into compliance" within the meaning of 45 C.F.R. 80.4(c). In this connection, the regulation itself in part states:

"In any case in which a final order of a court of the United States for the desegregation of such school or school system is entered *after* submission of such a plan, such plan shall be revised to conform to such final order, including any future modification of such order." (Emphasis added.)

■ Such a construction of the regulation as this Court now makes to the particular facts presented is in accord with the generally recognized rule that the courts are the branch of government ultimately responsible for the vindication of constitutional rights in the school area. This means nothing more or less than that judicial approval of a plan of desegregation—and particularly where

there is good faith implementation of the plan by the school authorities—establishes eligibility for federal aid. In such instances, the Executive officials, acting through the Department of Health, Education and Welfare or any other branch of the government, may not, by terminating funds, in effect disapprove a court-adopted plan. Neither may such officials finally determine, as Mr. Libassi's testimony as set out above reflects, that a school system is not in compliance with a court-adopted plan and act independently of any court action to terminate federal financial assistance. As the United States Court of Appeals for the Fifth Circuit stated in United States et al. v. Jefferson County Board of Education, 372 F.2d 836 (which opinion was adopted, subject to certain clarifying statements that are not here pertinent, by the United States Court of Appeals for the Fifth Circuit sitting en banc, March 29, 1967, Fifth Circuit, 372 F.2d 836):

"Schools automatically qualify for federal aid whenever a final court order desegregating the school has been entered in the litigation and the school authorities agree to comply with the order."

The action taken by the Department of Health, Education and Welfare in this case in terminating federal financial assistance to a school system that was operating under the order of this Court without first bringing to the Court's attention its findings and views and assigning as one of its reasons for terminating federal financial assistance that there was a "low number of Negro students that had actually chosen to attend white schools in the fall" amounts to an attack on the "freedom of choice" method of desegregation despite its approval by this Court, and despite the judicial policy in this circuit of giving "freedom of choice" plans an opportunity to function. Such action by the Department of Health, Education and Welfare serves to thwart the implementation of the order of this Court. In issuing the original opinion and order in this case, it was recognized that "freedom of choice" as a method of

desegregation might not fully and completely disestablish the dual public school system based upon race and that periodic review of the method's effectiveness would be necessary. In this connection, jurisdiction was retained for the purpose of such reviews.[6]

The problem this Court is now presented with in this case was envisioned by this Court in a recent case involving the Department of Health, Education and Welfare's 1966 Guidelines.[7] In that case, the Department of Health, Education and Welfare was put on notice by the following language that it must respect a court order for the desegregation of a school or school system:

"A Regulation of the Department of Health, Education and Welfare approved by the President on December 3, 1964, and which therefore has the force and effect of law, 45 C.F.R. 80.4 (c), requires that with respect to elementary or secondary school systems, 'assurances of compliance' as prerequisites to obtaining federal financial assistance 'shall be deemed to be satisfied' if such school system is subject to a final order of a court of the United States for the desegregation of such school system and gives assurance that it will comply with such order. As courts attempt to cooperate with executive and legislative policies, so too the Department must respect a court order for the desegregation of a school or school system."

■ In summary, this Court now finds and concludes that the court order of March 22, 1967,[8] had the effect of restoring each of the 99 school systems listed therein to an "in compliance" status insofar as being eligible to receive federal financial assistance is concerned. The action of the Department of Health, Education and Welfare in terminating federal financial assistance to the City of Lanett school system based upon a determination of "noncompliance" made by the Department of Health, Education and Welfare prior to the entry of the said court order is invalid and in violation of the provisions of 45 C.F.R. 80.4(c). So that there cannot be any misunderstanding, as a general proposition, this Court now holds that there can be no termination of federal financial assistance by the Department of Health, Education and Welfare as to any of the school systems under the order of this Court, where said systems have given assurance of compliance to the Department of Health, Education and Welfare and are in full compliance with the requirements of the said court order, without prior Court approval. To permit the Department of Health, Education and Welfare to terminate funds to school systems under the order of this Court would be an abdication on the part of the Court of its authority to require compliance with a court order. There can be no administrative supervision or review of a judicial decree. There must be judicial approval of the termination of federal financial assistance when a school system is operating under a court order. The temporary restraining order entered in this case on July 14, 1967, will be enlarged into a preliminary injunction.

■ The action of this Court should not be misinterpreted. The Department of Health, Education and Welfare continues to have the authority, even the duty, under congressional mandate for examining performance on the part of the school systems for the purpose of determining if there is good faith compliance with the order of this Court. The injunction to be issued in this cause does not mean that the Department of Health, Education and Welfare cannot and shall not supervise and audit the school systems subject to the order of this Court

6. Lee v. Macon County Board of Education, supra Note 1, 267 F.Supp. 458, at 479–480.

7. Alabama NAACP State Conference of Branches, et al. v. Wallace, et al., 346 F. Supp. 269 (May 3, 1967).

8. Lee v. Macon County Board of Education, supra Notes 1 and 6, 267 F.Supp. 458.

for the purpose of determining if the said school systems are effectively implementing the order of this Court. However, the procedure to be followed, if the Department of Health, Education and Welfare determines that a school system is not effectively complying with the order of this Court and determines further that there should be a termination of federal financial assistance, is for the Department of Health, Education and Welfare, by formal petition, to call such matter to the Court's attention so that a judicial determination may be made in the matter prior to an actual termination of federal financial assistance.

In consideration of the foregoing and for good cause, it is the order, judgment and decree of this Court that the defendants John W. Gardner, as Secretary of Health, Education and Welfare of the United States, F. Peter Libassi, as Special Assistant to the Secretary of Health, Education and Welfare for Civil Rights and Director of the Office for Civil Rights of Health, Education and Welfare, and James R. Dunn, Attorney for the United States Department of Health, Education and Welfare, together with their agents, officers, successors and all others acting in concert or participation with them, be and each is hereby enjoined from terminating or deferring any federal financial assistance to the Lanett City Schools, Lanett, Alabama, or any other school or school system listed by this Court in the order made and entered herein on March 22, 1967, until further order of this Court.

It is further ordered, adjudged and decreed that John W. Gardner, as Secretary of Health, Education and Welfare of the United States, F. Peter Libassi, as Special Assistant to the Secretary of Health, Education and Welfare for Civil Rights and Director of the Office for Civil Rights of Health, Education and Welfare, and James R. Dunn, Attorney, United States Department of Health, Education and Welfare, their agents, officers, successors and all others acting in concert or participation with them, immediately take the necessary and appropriate affirmative steps to rescind the Department of Health, Education and Welfare's action deferring or terminating federal financial assistance to any school system named in the March 22, 1967, order of this Court and to notify each school system named in said order of this Court that has had federal financial assistance deferred or terminated by the Department of Health, Education and Welfare that each of said school systems is now, in all respects, eligible to receive federal financial assistance through the administration of Titles IV and VI of the 1964 Civil Rights Act.

The Clerk of this Court is ordered and directed to take the necessary steps to have the United States Marshal for this district serve a copy of this opinion and preliminary injunction upon the Honorable Ben Hardeman, United States Attorney for the Middle District of Alabama, Montgomery, Alabama, and by registered mail to serve copies upon the Honorable Ramsey Clark, Attorney General, United States Department of Justice, Washington, D. C., and by registered mail to serve copies upon John W. Gardner, as Secretary of Health, Education and Welfare of the United States, F. Peter Libassi, Special Assistant to the Secretary of Health, Education and Welfare for Civil Rights and Director of the Office for Civil Rights of Health, Education and Welfare, and James R. Dunn, Attorney for the United States Department of Health, Education and Welfare.

The Clerk of this Court is further ordered and directed to forward a copy of this opinion and preliminary injunction to the superintendent of each of the ninety-nine school systems presently operating under this Court's orders.