Anthony T. LEE et al., Plaintiffs,
United States of America, Plaintiff-
Intervenor and Amicus Curiae,
Alabama State Teachers Association, Inc.,
Intervening Plaintiff,

v.

MACON COUNTY BOARD OF EDUCA-
TION et al., Defendants.

Civ. A. No. 604–E.

United States District Court
M. D. Alabama, E. D.

April 1, 1968.

See also D.C., 253 F.Supp. 727.

Fred D. Gray and Solomon S. Seay, Jr. (Gray, Seay, Langford & Pryor), Montgomery, Ala, Jack Greenberg and Melvyn Zarr, New York City, for plaintiffs.

Stephen J. Pollak, Atty. Gen., and Charles Quaintance and Frank D. Allen, Civil Rights Division, U. S. Dept. of Justice, Washington, D. C., and Ben Hardeman, U. S. Atty., Montgomery, Ala., for the United States.

Solomon S. Seay, Jr., Montgomery, Ala., for the Alabama State Teachers Association, Inc.

MacDonald Gallion, Atty. Gen., and Gordon Madison, Asst. Atty. Gen., State of Alabama, Montgomery, Ala., Hugh Maddox, Legal Adviser to the Governor of the State of Alabama, Montgomery, Ala., Maury D. Smith and T. W. Thagard, Jr. (Goodwyn, Smith & Bowman), Montgomery, Ala., and John C. Satterfield, Yazoo City, Miss., for defendants.

Oakley W. Melton, Jr., Montgomery, Ala. (Steiner, Crum & Baker), Montgomery, Ala., for defendant state officials and for Alabama High School Athletic Assn.

Before RIVES, Circuit Judge, and JOHNSON and GROOMS, District Judges.

PER CURIAM:

This is another supplementary proceeding where the Court is called upon to deal with problems incident to the desegregation of the several public school

systems throughout the State of Alabama enumerated in the order entered herein on March 22, 1967.[1] This phase of the case was initiated by the motion of the United States seeking to end in the public school systems of Alabama the practice of operating dual athletic programs based upon race; the United States, now joined by the plaintiffs, also seeks an end to the practice of scheduling interscholastic athletic contests by school officials only among the high schools traditionally maintained for students of the same race. When the motions were originally filed and heard on March 9, 1968, the defendants were the State Superintendent of Education and the State Board of Education and its individual members. Subsequent to the March 9 hearing, this Court, pursuant to Rule 21, Federal Rules of Civil Procedure, by formal order dated March 11, 1968, added the two statewide high school athletic associations as parties defendant. The Court also added as defendants the Alabama Collegiate Conference, the Southern Intercollegiate Athletic Conference and the Alabama Junior College Conference. This order was as follows:

"As a result of the hearing of March 9, 1968, the Court will give serious consideration to disestablishing the racially dual athletic systems in the schools, junior colleges and colleges in Alabama subject to the Court's jurisdiction. Any order which may be entered on that subject could seriously affect the two state-wide high school athletic associations, and the junior college and college athletic conferences. Those associations and conferences should be given an opportunity to be heard before any such order is entered.

"IT IS THEREFORE ORDERED that:

The ALABAMA HIGH SCHOOL ATHLETIC ASSOCIATION, and James R. Allen, J. L. Nolen, Sam W. Jones, J. T. Greene, Frank Kendall, F. T. Dobbs, W. W. Hester, and M. G. Couch, as members of the Central Board of Control of said association; and Herman L. Scott, as Executive Secretary of said association;

The ALABAMA INTERSCHOLASTIC ATHLETIC ASSOCIATION, and H. L. Shaw, James Hall, Lawrence Presley, W. J. Yelder, W. F. Burns, W. E. Scoggins, R. A. Stewart, Walker Alexander, Hugh Martin, George Mosby, John Nolen, and Eugene Royster, as members of the Central Board of Control of said association; and Severne Allen Frazier, as Executive Secretary of said association;

The ALABAMA JUNIOR COLLEGE CONFERENCE, and Lathem N. Sibert, E. R. Knox, Rex Turner, James Glasgow, B. E. Lee, and Walter Graham, as members of the Executive Committee of said conference;

The ALABAMA COLLEGIATE CONFERENCE, and Bill Short, Dallas Lancaster, Earl Watson, Ward Tishler, and Jack Powell, as members of the Executive Committee of said conference; and

The SOUTHERN INTERCOLLEGIATE ATHLETIC CONFERENCE, and E. L. Jackson, Julian Bell, Frank Forbes, C. Johnson Dunn, A. S. Gaither, Jay Hawkins, William Powell, W. T. Green, A. J. Lockhart, H. W. Crawford, and H. B. Thompson, as members of the Executive Committee of said conference,

are hereby added as parties defendant to this action.

"IT IS FURTHER ORDERED that the above-named defendants appear in person, or through their attorneys, at 9:30 A.M., March 23, 1968, in the courtroom of the United States District Court for the Middle District of Alabama, second floor, U. S. Post Of-

---

[1]. Lee v. Macon County Board of Education, 267 F.Supp. 458 (M.D.Ala.1967).

For a complete history of this case see id. at 460–464. See also 270 F.Supp. 859.

fice and Courthouse Building, Montgomery, Alabama, and show cause, if any they have, why appropriate orders should not be entered disestablishing the racially dual athletic systems in the schools, junior colleges and colleges of Alabama, and as to all matters relating to the terms and provisions of any order or orders to be entered on that subject."

Subsequent to the entry of this Court's order of March 11, 1968, the Alabama Junior College Association has admitted to its membership the two predominantly Negro junior colleges operated in the State of Alabama. Representatives from the Alabama Junior College Conference have formally assured this Court that no application for membership will be denied upon the basis of race or color and that its membership policies and athletic programs will in the future be carried out without regard to race or color. Upon this assurance, the United States and the plaintiffs have acknowledged to the Court that no further relief against the Alabama Junior College Conference is sought or is necessary.

The United States and the plaintiffs now take the position that at this time they do not desire any relief against the Alabama Collegiate Conference and its members, or the Southern Intercollegiate Athletic Conference and its members.

Upon this submission, this Court finds that there are actually two systems of high school athletics in Alabama—one predominantly white and the other Negro. The predominantly white schools belong to the Alabama High School Athletic Association. Their teams play only teams from other predominantly white schools. Their coaches are white and their game officials are white. They belong to conferences only with other predominantly white schools and hold their tournaments, conferences and competitions only for other predominantly white schools. The Negro high schools in Alabama belong to the Alabama Interscholastic Athletic Association. Their teams play only teams from other Negro schools. Their coaches are Negroes, officials at their games are usually Negroes, and their tournaments, conferences and championship games are participated in only by Negroes.

One of the most effective vehicles for the racial separation in Alabama athletics is these two high school athletic associations. All the accredited traditionally white high schools in the State that have interscholastic athletic programs—and there are approximately 360 of them—belong to the Alabama High School Athletic Association. All the traditionally Negro high schools in the State that have interscholastic athletic programs—and there are approximately 195 of them—belong to the Alabama Interscholastic Athletic Association. At the time the motions now presented were filed, both associations had rules which prohibited members of one association from competing against members of the other association in any athletic contests whatsoever.

The white association, by formal resolution on March 13, 1968, amended this rule so as to allow members of its association to play members of the Alabama Interscholastic Athletic Association. The answer of the Alabama Interscholastic Athletic Association filed with this Court on March 23, 1968, now specifically waives its rule which prohibited the Negro schools which were members of its organization from playing members of the Alabama High School Athletic Association.

The evidence is clear—and actually uncontroverted—that it is the policy of the State of Alabama, acting through its various school principals and coaches and the Alabama Interscholastic Athletic Association and the Alabama High School Athletic Association—both of which are State agents [2]—to operate

2. St. Augustine High School v. Louisiana High School Athletic Ass'n, 270 F.Supp. 767 (E.D.La.1967), now on appeal to the United States Court of Appeals for the Fifth Circuit, docket number 25357. The case was argued orally on March 6, 1968.

completely separate athletic programs based upon race or color throughout the schools in the State. The only desegregation of the athletic programs which has occurred in Alabama has been minimal and has occurred through some Negro athletes exercising a freedom of choice to attend predominantly white schools. The evidence is also clear that it is the policy of the State, acting through these various State agents, not to schedule athletic contests between a team from a traditionally white school and a team from a traditionally Negro school.

■ It is without serious question that athletic programs in the various public high schools throughout Alabama are an integral part of the public school system in Alabama. It is clear that one of the methods the State uses to operate these dual school athletic programs based upon race is through the dual athletic associations—the Alabama High School Athletic Association for predominantly white schools and the Alabama Interscholastic Athletic Association for the Negro schools. This dual athletic system operates to discriminate against Negroes. The United States Court of Appeals for the Fifth Circuit sitting *en banc* in United States v. Jefferson County Board of Education, 5 Cir., 380 F.2d 385, 389 (1967), stated *per curiam*:

"The Court holds that boards and officials administering public schools in this circuit have the affirmative duty under the Fourteenth Amendment to bring about an integrated, unitary school system in which there are *no Negro schools* and *no white schools— just schools*. Expressions in our earlier opinions distinguishing between integration and desegregation must yield to this affirmative duty we now recognize. In fulfilling this duty it is not enough for school authorities to offer Negro children the opportunity to attend formerly all-white schools. The necessity of overcoming the effects of the dual school system in this circuit requires integration of faculties, facilities, and *activities*, as well as students." (Emphasis supplied; footnotes omitted.)

This Court is clear to the conclusion that Alabama's racially dual system of athletics operates to impede the elimination of the dual school system in Alabama based upon race. Davis v. Board of School Commissioners of Mobile County, March 12, 1968, 5 Cir., 393 F.2d 690.

Alabama's dual athletic system has led to inadequate athletic programs in the various Negro schools. The Negro athletic association has not participated in the statewide tournaments and contests that are the prime source of revenue for the white athletic association and has thus operated and continues to operate with an extremely limited budget. This has resulted in inadequate financing of the athletic programs for the Negro schools. The dual system has resulted in a loss of recognition for athletes in the Negro schools—loss of recognition on both local and national levels. The National Federation of High School Athletic Associations recognizes only one association in Alabama: the Alabama High School Athletic Association, and it recognizes only records certified to it by that association.[3]

Since the athletic programs in the various schools throughout the State are, as stated, an integral part of the public school system, the defendant State officials have an affirmative duty to require the local school officials to disestablish the dual athletic system based upon race. In this connection this Court has previously found that the defendant State officials have "enormous authority and power over the actual operation of the

---

3. An example of this lack of recognition is that the National Federation of High School Athletic Associations has had certified to it by the Alabama High School Athletic Association that one of the students at Lanier High School, a predominantly white school, holds the record of 9.8 for the 100-yard dash. It may well be that a Negro high school athlete from Greenville holds the record of 9.6 for this event in Alabama.

various local school systems throughout the State" and that the "control on the part of these defendants over the local boards is all pervasive."[4] As to this affirmative duty, this Court has stated:

"[That the defendants have a] constitutional obligation to disestablish in each of the local county and city school systems in Alabama that are not already operating under a United States court order, the dual public school system to the extent that it is based upon race or color. In this connection, the State of Alabama and particularly the defendant state officials are under an affirmative constitutional duty to take *whatever* corrective action is necessary to disestablish such a system. Faculty members and staff members, facilities and *activities*, as well as student bodies, must be desegregated to such an extent that there no longer exists in the Alabama public school system discrimination of any sort or to any degree that is based upon race or color."[5] (Emphasis supplied.)

■ There is no question but that the Alabama High School Athletic Association and the Alabama Interscholastic Athletic Association, to the extent that they operate and control athletics and athletic programs of the public schools in the State of Alabama, are State agents. As a matter of fact, the offices of the white Alabama High School Athletic Association are in the State Office Building; the association pays no rent. The State Department of Education authorizes the printing of the association's handbook and has an advisory representative on the white association's Central Board of Control.[6] These associations, as State actors, also have an affirmative duty to disestablish the dual athletic

system in the public schools in the State of Alabama.

The method this Court used in its order of March 22, 1967, requiring that the State Superintendent of Education supervise the disestablishment of the State dual system of the schools is appropriate as one means for the disestablishment of the dual athletic system. However, it is considered necessary and appropriate to take further action designed to disestablish this dual athletic system to the extent that the two separate statewide high school athletic associations cannot continue to exist and operate as such. There should be only one statewide high school athletic association. There is no adequate explanation other than race for the existence of two such associations. As a matter of fact, the two associations only tend to perpetuate the dual school system based upon race and imperil the freedom-of-choice method of desegregating the public schools throughout the State of Alabama. This Court is of the opinion that the unification of the two athletic associations by merger is required. This merger is to be complete, and the merged athletic associations must in the future operate as one association. This Court recognizes that there are certain administrative problems involved in such a merger and will therefore afford the parties, including the two athletic associations, a reasonable time to effect this merger on their own and to submit to this Court their plan or plans for the complete merger of the two associations. For the purpose of assisting and guiding the parties, it is appropriate to observe that the planned merger of the Alabama High School Athletic Association and the Alabama Interscholastic Athletic Association should provide for a desegregated administrative staff and if, as has been

---

4. 267 F.Supp. at 462, 475. See Constitution of Alabama, § 262, and Code of Alabama, Title 52, § 14.

5. Lee v. Macon, 267 F.Supp. at 478.

6. The Central Board of Control for the Alabama High School Athletic Association is made up of eight members elected from eight districts throughout the State. The Central Board of Control for the Negro organization, the Alabama Interscholastic Athletic Association, is also made up of members elected from various districts throughout the State.

suggested to the Court, the Alabama Interscholastic Athletic Association is abolished through this merger, the present Executive Director of the Alabama Interscholastic Athletic Association, or someone designated by that association, should become an executive officer of the Alabama High School Athletic Association. The Board of Control should be composed of both whites and Negroes in a ratio roughly in proportion to the number of schools in each of the associations. As a suggestion, the eight members of the Board of Control for the Alabama High School Athletic Association could continue to be members of the Board of Control of the merged association. However, the Board of Control shall be enlarged so there could be (and should be) a minimum of four Negroes on the Board of Control, making a total of twelve members on the merged association's Board of Control. The efforts already made by the Alabama High School Athletic Association in eliminating one barrier that has tended to perpetuate the dual athletic programs in Alabama evidences a good faith approach to the problems involved. The cooperative and good faith attitude on the part of the officers of both of these athletic associations will, in the opinion of this Court, result in an efficiently operated merged organization—rendering valuable services in the area of athletics to all of the public schools in the State.

All athletic programs, contests and competitions, including track, basketball, baseball, football, cheerleader clinics and coaching clinics, where more than two schools participate, should be conducted effective immediately without regard to the racial composition of the students at the schools involved. This includes programs, competitions and contests on county, district, conference, sectional, area, regional and State levels. The plan to be submitted by the parties in not less than thirty days from the date of this order, in addition to the merger of the two athletic associations, should also include a method designed to further and completely abolish the dual athletic system based upon race through the use of the feeder system, the coaching staffs and the use of officials for athletic contests.

We decline to enter any order requiring schools of predominantly opposite races to schedule athletic games against each other and leave that matter to the school authorities with the hope that no judicial action will ever be necessary in this area.

An appropriate order will be entered in accordance with the foregoing.