This case comes to us as a result of the denial of injunctive relief by the Jefferson County Circuit Court. The plaintiff below, Dr. Joseph M. Dixon (Dixon), sought relief in a declaratory judgment action to copy the membership list of The Club, the defendant below. Dixon has been a member of The Club for over 25 years and visits the building housing The Club's operation at least once a week for the purpose of dining, dancing and socializing with its members. The Club is considered by many to be one of the most prestigious social clubs in Alabama. It sits like a jewel atop Red Mountain overlooking Birmingham's sprawling industrial and commercial complex. Its *Page 77 
members have contributed much to the growth of the City of Birmingham, as well as the State of Alabama.
The Club came into existence by Declaration of Incorporation filed in the office of the Judge of Probate of Jefferson County on November 29, 1951, pursuant to the provisions of the Social Clubs Section of Code 1940, Tit. 10, § 139 et seq. As a result of incorporation under this section, The Club is a voluntary non-profit corporation in the State of Alabama. This section requires that the declarant set forth the objects of the corporation. Article II of the Constitution of The Club states that the objects and purposes of the non-profit corporation are as follows:
 The objects and purposes of this club are: to foster, promote and encourage the social advancement of its members; to provide, conduct, maintain and operate suitable and proper club facilities for its members, and for their pleasure, health and happiness, but for nonpecuniary purposes exclusively and not for pecuniary profit or gain to its individual members, and without capital stock; to foster and advance the best interests of Birmingham and Jefferson County; to acquire, hold and use such real and personal property as may be needed or required, from time to time, to accomplish such purposes and objects, and to do and perform such other things as may be necessary and proper for the carrying out and accomplishment of such purposes and objects as are deemed necessary or proper by the Board of Governors of said club, including borrowing money and mortgaging club property.
Dixon claims that he wants the membership list to further advance the objects and purposes of The Club in fostering, promoting and encouraging social advancement of its members and to urge members to support him in his candidacy for a position as a member of the Board of Governors. He claims this is especially necessary because The Club is comprised of over 5,000 members and he cannot get to know all of them by visits at The Club, and, therefore, must communicate by letter or telephone.
The position to which Dixon aspires is provided for in Article IV, Section 6, of the Constitution of The Club. That section reads as follows:
 BOARD OF GOVERNORS. The management of this organization shall be under the Board of Governors. The Board of Governors may declare any office vacant and shall fill any office that may become vacant between elections. The Board of Governors shall have authority to make from time to time such rules and regulations governing the conduct of the members of the Club as said Board of Governors may from time to time deem advisable. The Board of Governors shall meet monthly and at such other times as they may be called by the President.
There can be no doubt that The Club has been highly successful operating in its present fashion under its Board of Governors. The Club owns assets worth in excess of six million dollars. Dixon does not dispute this fact, but contends that it may be even more successful if he is allowed to converse with other members about the purposes of the organization and about his candidacy for a position on the Board. Dixon contends that the system now being pursued by The Club results in its being run by a close-knit group of "insiders," and "outsiders" like himself are prevented from presenting new ideas to advance the stated purposes of the organization.
Dixon points out that The Club is governed by an elected 12-member Board of Governors, which in turn, appoints the executive officers. On a day to day basis, The Club is run by a salaried general manager. The terms of one-third of the Board of Governors expire each year and the results of the balloting for these four board members is announced at the annual meeting of The Club, held on the last Thursday in January.[1] *Page 78 
Sixty days prior to the annual election, the president of The Club appoints a nominating committee to make nominations to fill the vacancies on the Board of Governors, expiring that year. Forty-five days before the annual meeting, the nominating committee mails to each member, using the membership list, a statement setting forth the names of those nominated by it for the Board of Governors. Thirty days before the annual meeting, the nominating committee will accept nomination of any other member on written petition of twenty-five members in good standing. Ten days before the annual meeting, the Board of Governors mails to each member a ballot containing all of the names of those nominated. These ballots are returned by mail and must be received not later than the day before the annual meeting. A special firm is appointed to count these ballots on the day of the annual meeting and the results of the election are announced at the annual meeting. Other than the members of the Board of Governors, and the officers of the organization, only two or three other members attend the annual meeting.
Dixon's name was put in nomination by written petition of twenty-five members in good standing for the 1980 election. This was the first time in the 30-year history of The Club that such a nomination had been made. Dixon was not elected. Dixon believes that failure to have access to a membership list may have contributed to his failure in the election.
In early July of 1980, Dixon asked The Club for a list of the names and addresses of his fellow members. On July 23, 1980, Dixon again requested a list of the members of The Club and stated that he would be willing to pay the cost of copying same. This request was denied by The Club on the ground that "no such list had been prepared and distributed in the past." Finally, on October 7, 1980, Dixon demanded, by letter, that he be furnished a list of his fellow members and added an assurance that "he has no intention of using the list for any commercial purpose and will limit his use exclusively to that of exercising his right to the democratic process in accordance with the corporation laws of the State of Alabama, under the Charter and By Laws of The Club, Inc." A few days before Dixon's suit was filed the Board of Governors passed a resolution allowing Dixon to inspect the membership list, but denied him the right to copy the names, addresses and telephone numbers from the list. That resolution is as follows: *Page 79 
 [T]hat Dr. Dixon and his attorneys be advised that the list of [5,000] members of the organization would be available for inspection by him and his attorneys in the presence of counsel for the organization at the office of the organization during regular business hours; that such right of inspection [is] not to include the right to make copies of the names, addresses and telephone numbers of the members appearing on said list.
The trial court denied Dixon's request for injunctive relief to obtain the membership list based on a general fixed policy of The Club not to furnish a list to any member, the above resolution, the fact that there was no vested property interest in Dixon, the fact that the purpose for requesting the list by Dixon was for "politicing" [sic], and the fact that there was no showing of bad faith, fraud or malfeasance on the part of The Club.
The record does not reveal any long standing policy communicated to its members against furnishing a list, nor does it reveal that its Constitution and By Laws are furnished to its members on admission to membership. Dixon testified that he was not given a copy. The Club offered testimony that when its present general manager was hired in 1972, he was told not to furnish the membership list to the members. Only one request for the membership list had been made during that period of time and it was denied because admittedly the member wanted the list for commercial purposes.
The sole issue in this case is whether the trial court erred in denying the plaintiff injunctive relief to obtain the membership list of The Club under the facts in this case. The trial court did so err and its judgment is reversed.
Unfortunately, there is a paucity of authority dealing with the precise issue herein involved. 14 C.J.S. Clubs § 18, at 1291 (1939), states the general rule. The rule is:
 The members of an incorporated club are entitled to inspect the membership roll for a proper purpose; but, under a provision of a club constitution that action taken by the executive and advisory committees, not affecting the club's finances or property, shall be final, a member is not entitled to access to the membership roll, where such right is denied by the officers and the committees pursuant to a general policy, the member's rights being limited by the agreement under which the club was formed, as shown by the constitution and the by-laws. [Footnotes omitted.]
Counsel for the parties call to our attention three cases from other jurisdictions which they say control the disposition of the issue involved in this case. These cases are Allee v.James, 68 Misc. 141, 123 N.Y.S. 581 (1910); McClintock v. YoungRepublicans of Philadelphia, 210 Pa. 115, 59 A. 691 (1904);State v. Barton, 93 So.2d 388 (Fla. 1977). The Club relies on the Allee case and Dixon relies on McClintock and Barton. InAllee, the Supreme Court of New York said the following:
 The simple question presented herein is this: Is the plaintiff, as a matter of right, entitled to access to the roll of membership as against the refusal of the officers and committees, acting under the constitution and by-laws of the club, to allow the same? This question is purely personal to the plaintiff, arising from the fact of membership solely; for no property right is involved, and no allegation or proof indicates fraud or improper conduct on the part of the defendant and those represented by him, in violation or disregard of the plaintiff's rights. . . . I think the plaintiff's rights are limited by the agreement under which he and all other members of the club are associated, in promotion of its objects and purposes; the agreement being in this case the constitution and by-laws.
 It appears that the denial of access to the rolls has been made in pursuance of a general policy of the officers and the committees, and is now sought to be maintained by definite action taken by them under article 3 of the constitution, which, among other things, provides that:
 Any action taken at a properly constituted joint meeting of the executive *Page 80 
and advisory committees, which does not affect the finances or property of the club, shall be final.
Allee, at 123 N.Y.S. 582-3.
This case may have stated a controlling precedent, but for the fact that in addition to the contract of membership, the decision also hinges on the pursuance of a general policy of the organization denying membership lists. The refusal in one instance to furnish membership lists to a member seeking them for commercial purposes, plus direction to the general manager, uncommunicated by the Board of Governors to the membership not to furnish the list to the members, in our opinion, falls far short of a general policy denying a membership list. The position of The Club is also weakened by the fact that they could not controvert the statements made by the plaintiff to the effect that he did not receive the Constitution and By Laws, and that insofar as he knew, no other member had received them.
The Club's argument that Dixon cannot prevail because there is nothing in the Constitution granting him access to a membership list is of no avail. The countervailing argument is that there is nothing in the Constitution and By Laws that forbids the plaintiff having the membership list.
In State v. Barton, supra, a member of The Surf Club sued to compel the club to allow him to make a list of the names and addresses of the members of the club. This right was denied him by the trial court and the Florida Supreme Court reversed, holding thusly:
 Although the position of the appellant is not the same as that of a stockholder in a corporation for profit, he nonetheless now enjoys a voting privilege in The Surf Club. To that extent, he is entitled to know the names and addresses of others similarly conditioned. He has the right to communicate with such other holders of ownership units and to discuss with them matters that involve their mutual interest in the club such as they are.
Barton, at 389.
In McClintock v. Young Republicans of Philadelphia, supra, a similar result was reached. There, the plaintiff sought to inspect and copy the membership list in order to advocate policies which would tend to promote the objects for which the corporation was organized and oppose the election or re-election of incompetent officials. The Supreme Court of Pennsylvania upheld the trial court, granting the plaintiff's right to copy membership lists and said:
 We are, however, of opinion that the plaintiff is entitled to have furnished him by the appellants a list of the members of the defendant association for the purposes set forth in his petition. These purposes have been quoted above, and it is manifest that they are legitimate and lawful, and, if carried out, will promote the best interests of the association. . . . We can see no good reason why the officers of this corporation should withhold from any of its members the information desired by the plaintiff. If the purposes of the association, which are social and political, are to be accomplished and made effective, it is necessary that the members should know and communicate with each other. Hence each member should have access to the list of members of the organization, and to deprive him of it is to prevent him from assisting in carrying out the very object for which the corporation was created. Nor is there any sufficient reason shown here why the officers of the association should have access to the roll of members of the organization to the exclusion of the other members. All the members are presumed to be equally interested in promoting the welfare of the association, and all should be accorded equal privileges in the association for these purposes. To deny the plaintiff the relief he seeks here is, however, to give the officers of the corporation, the custodians of the list of membership, the opportunity to control the association, and to use the list, in the language of the plaintiff's petition, "to further the private political ambitions of any member or group of members." It is, we think, manifest that the list of membership of associations *Page 81 
of this character should, at proper times, be open to the inspection of all members, thereby affording to each member an opportunity to aid in carrying out the object of the organization as set forth in its charter.
It would seem from the above pronouncements, if we choose to accept them, that the plaintiff's position here is unassailable. However, in Alabama, we are loath to enter into the affairs of voluntary private associations, particularly if they are of a social or religious nature. The law regarding voluntary associations has been fully developed in MedicalSociety of Mobile County v. Walker, 245 Ala. 135, 16 So.2d 321
(1944). There, this Court said:
 Ordinarily a court of equity will not interfere with the internal affairs of a voluntary association, or assume jurisdiction to restrain its acts done or attempted in accordance with its rules and within the scope of its powers. . . . 28 Amer.Jur. section 161, page 351.
Walker, 245 Ala. at 140, 16 So.2d at 325.
The Walker court also said that a voluntary association,
 [M]ay make their own constitution and by-laws; and so long as they remain unchanged, each member is alike bound and shielded by them. The society too must observe its own constitution and by-laws until it changes them in legal form. Of course such constitution and by-laws, to be obligatory, must not contravene public law, nor any principle of public policy. Weatherly v. Medical Surgical Society of Montgomery County, 76 Ala. 567.
Walker, 245 Ala. at 138, 16 So.2d at 324.
We do not find that the actions of The Club contravene public policy. Although plaintiff urges that the 1955 Non-Profit Corporation Act provides at Code 1975, § 10-3-127, a right which the plaintiff seeks in this case, we simply cannot hold that the public policy expressed in that Act applies to a corporation incorporated under Code 1940, Tit. 10, § 139 etseq., some 4 years earlier simply because The Club is a non-profit corporation and could have qualified under the social section of that Act if it had been in existence at the time of its incorporation or may still elect to come under the provisions of that Act. Indeed, the legislature could have amended Code 1975, § 10-4-300 (the recodification of Code 1940, Tit. 10, § 139 et seq.) to include the provision of the Non-Profit Corporation Act, § 10-3-127, which requires the corporation to keep complete books and records of account and the names and addresses of its members entitled to vote and make them available for inspection by any member or his agent or attorney at a reasonable time. This they declined to do and we refrain from conferring that right by judicial fiat. See also, Hayes v. Mobile County Board of School Commissioners,405 So.2d 366 (Ala. 1981).
Having found neither approach made by the parties satisfactory, we broach another alternative, the application of which is more in line with the facts of this case. When the Board of Governors by resolution authorized the plaintiff or his attorney to inspect the membership list of The Club, it conferred a property right upon plaintiff which he may or may not have had prior to said resolution.[2] We do not take The Club's offer to allow plaintiff to inspect the membership list to have been a meaningless gesture. However, the right to inspect without the concommitant right to copy would have been a meaningless gesture, considering that the plaintiff and his attorneys would have had 5,000 names, addresses and telephone numbers to inspect. When this court provided for the production of documents by discovery, it coupled with the right to inspect, the right to copy. See Rule 34, A.R.C.P. It recognized that the right to inspect is of questionable value without the right to copy.
Although we are reluctant to intervene in the internal affairs of voluntary *Page 82 
associations, religious and social, an exception is made where a member can show an invasion of a private property right granted him by the association or club. In such instances we apply due process safeguards. Hill v. Abyssinia MissionaryBaptist Church, 370 So.2d 1389 (Ala. 1979); AbyssiniaMissionary Baptist Church v. Nixon, 340 So.2d 746 (Ala. 1976);Willowbrook Country Club, Inc. v. Ferrell, 286 Ala. 281,239 So.2d 298 (1970); Williams v. Jones, 258 Ala. 59, 61 So.2d 101
(1952); 6 Am.Jur.2d Associations and Clubs, § 28, at 454 (1963). Due process required that Dixon be allowed to copy the documents he had been given the right to inspect.
It is important to note what we have not decided. We have not decided that every member is entitled to a membership list, nor that the plaintiff has a right to circulate this list among the other members of the corporation. We have not decided that under proper circumstances the corporation could not amend its constitution and bylaws to prevent members from obtaining membership lists. These questions must await another time and another case. Plaintiff is entitled to the membership list for the uses which he articulated at the trial of this case. He has committed himself to pay for the list and not to use same for a commercial purpose and we respect this commitment.
The Club has predicted dire consequences as a result of the release of the membership. We cannot foresee such dire consequences, but in any event, our courts stand open to correct any illegal use of the list. The judgment of the trial court is due to be reversed and the trial court is directed to enter an injunction requiring The Club to furnish Dixon with its membership list.
REVERSED AND REMANDED WITH DIRECTIONS.
FAULKNER, JONES, SHORES, EMBRY and BEATTY, JJ., concur.
TORBERT, C.J., and MADDOX and ALMON, JJ., dissent.
[1] Article IV, Section 2, of The Club's constitution specifies the number of members constituting the Board of Governors and their respective terms in office. This section reads as follows:
 The Board of Governors shall consist of twelve (12) members of The Club, elected as herein provided, together with the officers and the last retiring President of the Club who shall be ex officio members of said Board. The members of said Board, except ex officio members thereof shall serve for a period of three (3) years, or until their successors shall have been elected and take office.
Rule No. 15, General Rules and Regulations Governing The Club, describes the manner in which the Board of Governors is elected. This rule provides as follows:
 a. At least sixty days before the annual meeting in January, the President shall appoint a nominating committee, which shall nominate at least two candidates to fill each vacancy on the Board of Governors which will exist on the Annual Meeting date.
 b. At least forty-five days before the Annual Meeting in January, a copy of the report of the nominating committee shall be posted on the bulletin board at "The Club, Inc.," and a copy mailed to each member of the "The Club, Inc." Additional nominations may be made over the signature of twenty-five members in good standing, provided the nominations are received by the Secretary at least thirty days before the Annual Meeting in January.
 c. Voting for nominees for the Board of Governors shall be by mail ballot only. At least ten days before the Annual Meeting in January, an official ballot shall be mailed to each member of "The Club, Inc.," in good standing, with a self-addressed return envelope enclosed, marked "Official Ballot." Ballots, to be counted, must be received not later than the day before the Annual Meeting in January. The President shall appoint tellers to count the votes, and they shall meet at 9:00 A.M. on the day and at the place designated for the Annual Meeting, and shall report the results of the election at the Annual Meeting. The number of candidates to be elected that receive the largest number of votes will be declared elected.
[2] The record reveals that there is no membership list in existence, but it is retained in The Club's computer. This list can be reproduced within approximately two and one-half hours. The plaintiff is prepared to pay the cost of such reproduction.