BRYAN, Justice
(concurring in the result).
I agree that the decision of the Alabama High School Athletic Association (“the Association”) should stand, given the prevailing law and the facts presented here. I write specially to argue that this Court gives too much deference to the decisions of the Association.
In Scott v. Kilpatrick, 286 Ala. 129, 132-33, 237 So.2d 652, 655 (1970), this Court first articulated its general rule of judicial noninterference with the Association’s decisions:
“If officials of a school desire to associate with other schools and prescribe conditions of eligibility for students who are to become members of the school’s athletic teams, and the member schools vest final enforcement of the association’s rules in boards of control, then a court should not interfere in such internal operation of the affairs of the association ....
“Of course, if the acts of an association are the result of fraud, lack of jurisdiction, collusion, or arbitrariness, the courts will intervene to protect an injured parity’s] rights.”
Fourteen years after Kilpatrick, in Alabama High School Athletic Ass’n v. Rose, 446 So.2d 1 (Ala. 1984), this Court added a requirement that one or more of the narrow jurisdictional grounds be'supported by clear and convincing evidence. Further, this Court required that the trial court make an unequivocal finding of a jurisdictional ground supported by clear and con-vincingevidence:
“We reaffirm the Kilpatrick test to the effect, that the Court’s jurisdiction in such matters is invoked when, and only when, the averments of fraud, collusion, or arbitrariness are supported by clear and convincing evidence; and the trial court’s acceptance of jurisdiction will be affirmed only where its order makes an unequivocal factúal finding of one or more of those narrow, restrictive grounds, founded upon clear and convincing evidence.”
446 So.2d at 5.
This creates a high jurisdictional bar for a party to clear to get a dispute with the Association decided by a court. There is a presumption favoring the Association’s “absolute authority in the conduct of its own affairs,” and the burden to overcome this presumption is a “heavy one.” Rose, 446 So.2d at 5. Quite simply, “normally a court in this state has no jurisdiction to resolve disputes regarding eligibility under the rules of the [Association].” Alabama High School Athletic Ass’n v. Medders, 456 So.2d 284, 286 (Ala. 1984) (emphasis added). This Court gives tremendous deference to the Association, seemingly more so than the deference given to some other voluntary associations. Some other cases involving voluntary associations do not contain the clear-and-convincing-evidence requirements first announced in Rose. See, e.g., Dixon v. The Club, Inc., 408 So.2d 76 *1104 (Ala. 1981); and Wells v. Mobile Cty. Bd. of Realtors, 887 So.2d 140 (Ala. 1980); but see Talladega Little League, Inc. v. Anderson, 577 So.2d 1293 (Ala. 1991) (quoting Rose and concluding that that case, which involved a decision by a little-league-baseball association, was no different from cases involving the Association). Although we have not been asked to review our rule of judicial noninterference, I would, if asked, argue that the deference afforded the Association be scaled back. I would remove the general rule of judicial noninterference and replace it with the familiar standard of review for the decisions of administrative agencies.
I find instructive an opinion issued by the Supreme Court of Oklahoma in 2013, Scott v. Oklahoma Secondary School Activities Ass’n, 313 P.3d 891 (Okla. 2013). Before Scott, Oklahoma, like Alabama, had a general standard of judicial noninterference regarding decisions of its interscholastic association, the Oklahoma Secondary School Activities Association (“OSSAA”). Similar to the caselaw in Alabama, pre-Scott caselaw in Oklahoma provided that “courts should not intervene except to ascertain whether association proceedings are conducted pursuant to the rules and laws of the organization, in good faith and lawfully. Absent fraudulent, collusive, unreasonable, arbitrary or capricious behavior, [the Supreme Court of Oklahoma) may not overturn a voluntary association’s enforcement'-of its rules.” Brown v. Oklahoma Secondary Sch. Activities Ass’n, 125 P.3d 1219, 1224 (Okla. 2005). When this Court adopted its rule of judicial noninterference in Kilpatrick, it cited, among other cases, an Oklahoma case, Morrison v. Roberts, 183 Okla. 359, 82 P.2d 1023 (1938), in support of the rule. Although Oklahoma had a long history of judicial nonintervention in high-school athletics, the Oklahoma Supreme Court moved away froni that position in Scott.
The court in Scott determined that, because the OSSAA plays a role that “goes above and beyond that of a traditional voluntary association, closer scrutiny when reviewing its actions is a necessity.” 313 P.3d at 902. Although there are some differences between the OSSAA and the Association, there are some key similarities that make Scott informative. The court in Scott observed that its doctrine of judicial nonintervention was based on the notion that the OSSAA is a truly voluntary association. However, the court then determined that the OSSAA is not a truly voluntary association. The court stated that, for a decision to join an association to be a voluntary one, “it must be done unconstrained by outside interference and done without valuable consideration or legal 'obligation." 313 P.3d at 897. The court then noted that a school must join the OSSAA to compete with other OSSAA schools and that'most public and priváté schools in the state' are members of the' OSSAA. Thus, “[s]hould the school desire the value and enrichment its families and students receive from interscholastic competition, it effectively has no choice but to join the OSSAA.” 313 P.3d at 898. The court in Scott also noted that a school that joins the OSSAA receives the valuable consideration of the ability of its- students to compete in interscholastic athletics with other students in the state. In sum, the court concluded that, “[f]unctionally, membership in the OSSAA is not a choice but a requirement.” Id.
Similarly, I do not- view the Association as a traditional voluntary association. Under the Association’s bylaws, a school must join the Association to compete with other member schools in the Association. The Association has over 400 public and private schools as members. Private schools in Alabama may have the option of joining other athletic associations, like the Alabama Independent School Association or *1105 the Alabama Christian Athletic Association. However, it appears that public schools that desire-to participate in interscholastic athletics must, as a practical matter, join the Association. Like the OS-SAA’s membep schools, the schools that choose to join the Association receive the valuable consideration of being able to compete athletically with other schools in the Association. As is true of the OSSAA in Oklahoma, the Association is- in almost complete control- of the high-school athletic competition among public-school students in Alabama.
The court in Scott also concluded that the idea that the' OSSAA might not fit within the definition of a voluntary association was reinforced in a different context by the Court of Appeals for the Tenth Circuit in Christian Heritage Academy v. Oklahoma Secondary School Activities Ass’n, 483 F.3d 1025 (10th Cir. 2007). In that case, the court determined that the OSSAA was a state actor for purposes of the Fourteenth Amendment. The court based that conclusion on the “ ‘persuasive entwinement of public institutions, and public officials in its composition and workings.’” 483 F.3d at 1030 (quoting Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass’n, 531 U.S. 288, 298, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)). Similarly, in 1968, a federal district court concluded that the Association was a state actor; under the Fourteenth Amendment in Lee v. Macon County Board of Education, 283 F.Supp. 194 (M.D. Ala. 1968). I.do not address whether this Court should consider the current version of the Association a state actor for purposes of the Fourteenth Amendment. I merely note that Lee offers some support for the idea that the Association is something other than a traditional voluntary association.
The court in Scott also observed-that, “[i]n many respects, the OSSAA already behaves like a state agency and adheres to requirements provided by statute,”. 313 P.3d at 900. In this area, admittedly, there are some distinctions between the OSSAÁ and the Association. For example, Oklahoma statutes give the OSSAA specific authority over eligibility in certain circumstances and subject the OSSAA’s meetings to open-meeting requirements; there appear to be no corresponding statutes in Alabama. However, it is still true that the Association, like the OSSAA, is a pervasive and dominant force in interscholastic athletics—especially among public schools—in Alabama. As the court in- Scott noted: “ ‘The necessity of court action is apparent where the position of a voluntary association is so dominant in its field that membership in a practical sense is not voluntary but economically necessary.’” 313 P.3d at 901 (quoting Board of Regents of Univ. of Oklahoma v. National Collegiate Athletic Ass’n, 561 P.2d 499, 504 (Okla. 1977) (finding judicial scrutiny of the NCAA appropriate)).
The court in Scott also noted that member schools pay .fees to be members of the OSSAA. The same is true of the Association’s member schools. With respect to the use of public-school funds by the Association, I find the court’s, observation about the OSSAA to be apt:
“B,ecause the source of funding of public schools is from Oklahoma taxpayers, the . State of Oklahoma has an interest in ensuring that tax dollars are used by the OSSAA in a manner that is not arbitrary and capricious, but one that is fair and - impartial. Meaningful review of the OS- . SAA’s actions is necessary to ensure this.”
313 P.3d at 902. Further, the Association controls a field in which the people of this State have a substantial interest.
The court in Scott concluded that the OSSAA should be .treated more like ah *1106 administrative agency than a traditional voluntary- association. The court concluded:
“The standard of review from Morgan[ v. Secondary Sch. Activities Ass’n, 207 P.3d 362 (Okla. 2009) ], relied upon by the district court in making its ruling cannot properly be applied to a nominally voluntary association that is not truly voluntary. While the OSSAA is not a state agency subject to the provisions of [Oklahoma’s Administrative Procedures Act], it is similar enough in character and in reach that courts should apply the standard of review provided by the [Administrative Procedures Act] in 75 O.S. 2011 § 322 for agency decisions.”
313 P.3d at 902. Similarly, although the Association is not a State agency, “it is similar enough in character and in reach” that a court should apply the same standard of review applicable to agency decisions found in the Alabama Administrative Procedure Act, § 41-22-1 et seq., Ala. Code 1975 (“the AAPA”). See § 41-22-20(k), Ala. Code 1975. Because the Association plays a role that “goes above and beyond that of a traditional voluntary association,” greater scrutiny is required. 313 P.3d at 902.
Under the current standard, a court may exercise jurisdiction over a decision of the Association if the decision is the result of fraud, lack of jurisdiction, collusion, or arbitrariness. Thus, a court must essentially evaluate, to some degree, the merits of the case to determine whether the court should even exercise jurisdiction over the Association’s decision.-It would be more straightforward—and, as argued above, more appropriate—for a court simply to exercise jurisdiction over a dispute and apply a familiar and well settled standard of review. To be sure, the AAPA creates a deferential standard of review, but it is not as deferential as the current standard applicable to the Association. In relevant part, the AAPA provides:
“[T]he agency order' shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute.... The court may reverse or modify the decision or grant other appropriate relief from the agency action ... if the court finds that the agency action is due to be set aside or modified under standards set .forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
“(1) In violation of constitutional or statutory provisions;
“(2) In excess of the statutory authority of the agency;
“(3) In violation of any pertinent agency rule;
“(4) Made upon unlawful procedure;
“(5) Affected by other error of law;
“(6) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
“(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.” -
§ 41-22-20(k). This familiar standard would be easy for courts to apply and would provide sufficient judicial supervision of the Association, which plays a pervasive and dominant role in high-school athletics in Alabama.