**MORRISON et al. v. ROBERTS.**

No. 28653. Sept. 16, 1938

Busby, Harrell & Trice, for plaintiffs in error.

Hugh Sandlin, George W. Oliphant, and C. H. Baskin, for defendant in error.

WELCH, J. The plaintiff, Billy Roberts, aged 17, seeks by this action to review an order of the board of control of the Oklahoma High School Athletic Association, and seeks by writ of mandamus to compel that board to vacate, annul, and cancel the order in question. That order dated in February, 1938, dealt with the violation of one of the association rules by plaintiff, and declared in effect the penalty prescribed by the rules, which is the ineligibility of plaintiff to participate in athletic contests between member schools of the association for one year. To avoid any unfair inference against the plaintiff we should say at the outset that the rule violation does not involve any willful personal misconduct or immorality on the part of this young man or even any willful lack of sportsmanship. It is merely the violation of a fixed rule against accepting an award, in this case a gold football of the value of a few dollars.

Some statement of essential facts as to the relationship of the parties must be made. Plaintiff is a high school student at Holdenville, where his status as a senior at his age testifies to his diligence and learning He was the "center" and "co-captain" of the football team, where he was likewise quite successful. The Oklahoma High School Athletic Association is a voluntary unincorporated association of many of the public high schools of the state, including the Holdenville High School. These schools perfected this organization many years ago with officers and a constitution and rules. Each member school having one vote. The general purpose was and is to promote and regulate competitive athletics between member schools. To this end the usual officers are elected by the member schools, including the board of control, which is given final control in all matters. The rules regulate competitive athletics between the member schools in rather minute detail. Provision is made as to the exact date when football practice may start, and the earliest date for the first game, and the time when the season shall end and forbidding past season games except in well-defined cases. Provision is made for the exact method of selecting game officials, with rights in the visiting team to disapprove them. Meets and tournaments may be held only on approval of the board of control, and there are various other regulations as to the member schools. A member school with knowledge of any rule violation in another school is required under severe penalty to inform the association officials about it.

The rules deal at great length with the "eligibility" of players to participate on the competitive football teams. It is provided that one must be under 21 years of age, this year under 20 years, must enroll in school in a certain period, must maintain a certain percentage of schoolroom attendance and certain grades or standing in his school work without any special tests or recitations There is a provision testing eligibility by bona fide residence of the schoolboy's parents, and definite provision on eligibility of a "migrating" pupil. In certain specified ways a pupil may forfeit "eligibility," and there is provision for his regaining it. A pupil forfeits his "eligibility" by rule 4 if he comes to be "under discipline" or if his character or conduct is such as to reflect discredit on his school, or if he becomes a member of a prohibited secret society or fraternity. By another rule he forfeits his "eligibility" if he uses his athletic skill or knowledge for financial gain or if he appears in certain events with professional athletes. The rules specify the number of years, semesters, and seasons in which a student is permitted to remain "eligible." And there is the rule which this plaintiff violated, which prohibits the acceptance of certain awards and specifically provides that he must remain "ineligible" for one year. There are many other rules and specific regulations, but these listed will suffice to illustrate the detailed regulations which the schools themselves have adopted and adhered to for a number of years.

Matters of rule violation are first handled by the secretary of the association, with constitutional provision for appeal to the board of control, and it is specifically provided that the decision of that board shall be final. Here the fact of plaintiff's "ineligibility" was set out in the secretary's opinion, and on review was declared by the board of control after further hearing. The same action occurred as to several of plaintiff's teammates who had offended the rules in the same way.

The plaintiff contends that this action and order of that board was arbitrary and erroneous and subject to review and cancellation by this action in mandamus. And it is pointed out that plaintiff and his teammates gave back the gold football awards, but that the board adhered to the decision that the acceptance completed the violation and worked the loss of "eligibility" for the year prescribed by that particular rule.

It is difficult to follow plaintiff's argument that the action of the board was arbitrary. If the board had any discretion in construing the rule, and determining whether these gold footballs were 'awards" in the meaning of the rule, nevertheless the constitution gives finality to the board's ruling. It is not contended the board acted corruptly. It must be assumed that all of the member schools of the association, including the Holdenville school, acquiesced in all these rules and in the constitutional provision vesting final authority in the board of control.

If it be said that the rule involved and the fixed penalty is arbitrary, that may be so. And one unskilled in such matters might see no logic in or necessity for that rule, or might think it should be or might as well be otherwise. The same might be said also as to the arbitrary rule that "three strikes" retires the batter, not more nor less; or the rule that a "touchdown" counts six points, while the "point after touchdown" counts only one point; or the rule that the "base-runner" advances if the pitcher makes a "balk;" and the same might be said of many of the other rules of the association above referred to. Many of those rules are in fact arbitrary rules. They might provide otherwise or might not be there at all. But so long as the member schools want them, they are entitled to have them and to have them construed and enforced by final action of the board of control as long as they want that.

It is often thought and sometimes vociferously stated that athletic officials, including referees and umpires, have grievously erred in decisions and rulings. But when adopted rules, acquiesced in by all, give them the power of final decision, such decisions should not ordinarily be reviewed by the courts and vacated by the writ of mandamus.

It is a matter of common knowledge that in various athletic organizations, and in various athletic contests, certain officials are clothed with final authority to construe rules and enforce penalties, and to suspend players from the game in progress, or for a definite period of time, or to forfeit the game or the match to one participant or the other. Frequently such rule enforcements work more or less grievous injury to one directly affected thereby, without in any sense giving him a right to correct or change the result by court action such as this. The courts generally should leave the final authority in the athletic official or board, with whom that authority is placed by those who had authority to make the rules and authorize the method of application and enforcement.

The plaintiff has many rights as a citizen and as a high school student, but he has no vested right in "eligibility" as dealt with at such great length in the rules of the Oklahoma High School Athletic Association. The defendant board of control was clothed with ample authority to so construe, apply, and enforce this rule, with its specific provision for "ineligibility" for one year.

These rules are subject to change if the member schools desire a change. This may be done at the annual meeting or by referendum vote according to specific provision. But so long as these member schools, including the Holdenville school, desire to attach all of these many conditions, limitations, and restrictions on their "eligibles," then surely they should be permitted to do it, so far as the courts are concerned. There is nothing unlawful or evil in any of those rules nor in the provision resting final authority in the board of control. Surely the schools themselves should know better than anyone else the rules under which they want to compete with each other in athletic events. And doubtless every one of these rules is founded upon reasons wholly satisfactory to the member schools. And if the officials of the various high schools desire to maintain membership in the association, and to vest final rule enforcement authority in the board of control, then, so far as affects the affairs of the association, the courts should not interfere.

The plaintiff shows no clear legal right to have the courts interfere by writ of mandamus; no plain legal duty rests upon the defendants to cancel and vacate their order as plaintiff seeks to compel by mandamus, and therefore his action must fail.

See section 730, O. S. 1931, 12 Okla. St. Ann. sec. 1451; Witt v. Wentz, 142 Okla. 128, 286 P. 796; Bath v. Dumas, 108 Okla. 260, 236 P 1; State ex rel. Shepard, Treas., v. Crouch, 31 Okla. 206, 120 P. 915; Payne, County

Treas., v. Smith, 107 Okla. 165, 231 P. 469; State ex rel. Thomas v. Brenner, 171 Okla. 320, 42 P.2d 823.

It is urged with force that an action in mandamus will not in any event lie against the defendants as individuals or as members of this board of a voluntary unincorporated association. We deem it unnecessary to lengthen this opinion by any further discussion or determination on that specific point.

The trial court was of the view that plaintiff should prevail and so ordered. That judgment was, for the reasons above stated, erroneous. The judgment is reversed and the cause dismissed.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS, CORN, GIBSON, and HURST, JJ., concur. RILEY, J., concurs in conclusion. DAVISON, J., dissents.

DAVISON, J. (dissenting). I am unable to concur in the conclusion announced by my associates. The questions involved are of sufficient magnitude to warrant a statement of my individual views.

In my judgment, the majority opinion only slightly touches, in fact almost totally ignores, the feature of this case to which controlling importance should be attached. namely: the meaning of the word "award." It overlooks this most important question by taking for granted that the receipt by a high school student of a "metallic football watch charm," tendered as a gift, constitutes the acceptance of an "award."

The importance of recognizing the precise and correct meaning of the word alluded to will be more apparent upon a brief review of the situation here presented.

The Oklahoma High School Association, a voluntary association, operates under a constitution and promulgates rules by which the member schools are governed. Its right to provide such rules and prescribe penalties for their nonobservance is not questioned.

The particular provision of the rules asserted to have been violated in this case is known and designated as section 3 of rule 5 and provides:

"Section 3. (a) Only one athletic award of more than $1 00 in value, other than medals or trophies and cloth, felt or chenille athletic letters may be made to a student participating in interscholastic athletics.

"(b) The award of medals or trophies is to be made only in conferences, meets, or other athletic events involving competition among several schools, and arrangement for such awards must be made in advance of the season or meet by the organization sponsoring them so that all may have the same opportunity of qualifying for the awards.

"(c) Any member of the Association which violates this rule shall be liable for suspension from the Association for one year. Any individual player accepting an award in violation of this rule shall be ineligible for one year."

In 1937, the Holdenville Highschool football team, a member of the association, won the conference championship. The defendant in error was a player on that team. After the season had closed, some of the local "fans" decided to present each of the members of the team with a small gold football worth about $2.50 or $3.00. At or about the same time, the school presented the players with sweaters. Both the sweaters and the footballs were accepted. Later, a question was raised concerning the propriety of receiving both, and upon learning there was some doubt about the matter the players returned the footballs to the donors. The secretary of the association and the board of control of the association. upon review of his (the secretary's) decision, concluded, however, that acceptance of the footballs constituted the "accepting of an award" in violation of section 3 of rule 5, supra, and required that the several players be declared ineligible for a period of one year.

There seems to be little if any question that the defendant in error and other boys accepting the footballs acted in good faith and in the belief that such acceptance would not constitute a violation of the rules. Indeed, it would seem most absurd to assume that a student player would purposely place his eligibility in question for the sake of a gift of such slight intrinsic value. But it is urged by the association, and held, in effect. by a majority of the court, that "good faith" did not constitute a defense to violating the rule if the rule was in fact violated. With this view I concur, even though it be somewhat harsh in its operation, since it places upon a boy of immature years the burden of correctly deciding at his peril (sometimes upon the spur of the moment) whether or not he should accept a token of this character when the same is tendered. I do, however, respectfully submit and urge that if the boy decides correctly, it is most unjust and unfair that he be improperly penalized, and I further respectfully submit that the courts should not be, and in this case are not, impotent to correct the injustice.

It is a rule of law, too common to require the citation of authority, that words, when used in a contract or statute, are to be attributed a meaning in accord with their accepted use in the English language. Assuredly, this rule extends to the interpretation of rules of a voluntary association. which are, in effect, the laws or statutes of the organization. No invocation of the principle involved in the rule could be more apt than the case at bar, since it was promulgated and administered by men of learning in the academic world. Certainly we must assume that the words used by them were chosen advisedly and with a full comprehension of their true meaning.

The noun "award" is defined in Webster's New International Dictionary as follows: "1. A judgment, sentence, or final decision; specif., the decision of arbitrators in a case submitted. 2. The document containing the decision of arbitrators. 3. That which is awarded." In Funk & Wagnalls New Standard Dictionary, its meaning is stated in the following language: "1. A decision rendered by a judge or umpire; especially, in law, a decision by arbitrators on a matter in controversy duly submitted to them. . . 2. The paper, writing, or instrument containing the decision of arbitrators and signed by them. 3. The thing or the amount awarded by the decision of arbitrators, jurors, or judges. . ."

The important element to observe in connection with this definition is that when the word "award" is properly applied to a thing, it is limited in its use to an item which is granted as the result of a decision of judges or arbiters of a controversy or contest of some kind. This, of course, presupposes the existence of competition, the decision on which is submitted for determination.

In the instant case, it is not contended that the donors of the gifts in any way acted as arbiters between contesting parties or that the schedule of the Holdenville team or its members was played in expectation or anticipation of being given the metallic footballs or anything else by the "fans" acting as arbiters. It appears that the donation of the items involved was in every sense a gift as distinguished from an "award."

The question of whether the individual player could, by a rule designed for that purpose, be restrained from receiving gifts is, of course, another and different question not now before us. I think, undoubtedly, such a rule could be made, but, if the association desires to so legislate, it should choose words appropriate for the purpose rather than attempt to enlarge upon and distort the meaning of language employed for other purposes.

May a court properly interfere to correct such an injustice as is here presented? The majority opinion correctly states that "courts generally should leave the final authority in the athletic official or board." But the general rule thus recognized is not without its exceptions and limitations. The rule, as well as its limited application, is recognized in texts upon the subject. Thus, it is said in 25 R. C. L. pp. 57, 58:

"The decisions of any kind of voluntary society or association in admitting members, and in disciplining, suspending, or expelling them, are of a quasi judicial character. In such cases the courts never interfere, except to ascertain whether or not the proceeding was pursuant to the rules and laws of the society, whether or not the proceeding was in good faith, and whether or not there was anything in the proceeding in violation of the laws of the land. If it is found that the proceeding was had fairly, in good faith, and pursuant to the laws of the organization, and that there was nothing in it in violation of the law of the land, the decision is conclusive, like that of a judicial proceeding, and renders the case res judicata, and will preclude its re-examination on its merits by a judicial court. But if for any reason the decision of such tribunal is void, the disciplined member will be reinstated by the courts, as where an expulsion was on a charge which did not justify expulsion even if established. . ."

If my construction of the rules of the association may be conceded as correct, then I respectfully urge that this case clearly falls outside the general rule, for the expulsion or suspension of eligibility in the case was "upon a charge" of receiving a gift "which did not justify expulsion" under a rule forbidding the acceptance of an award.

The comparison made in the majority opinion of the rule here involved and a decision made in connection therewith to decisions made under such rules as that providing a batter is out when three strikes have been counted against him is somewhat misleading unless some reflection upon the marked distinction between the two situations be invited. The latter class of rules are those governing the conduct of contests and must necessarily be hastily and arbitrarily decided. Deliberation is not contemplated in decisions under such rules. Whereas, the rule here under discussion contemplates a calm deliberation and balanced judgment in its enforcement. The machinery set up by the association itself which pro-

vides for an opportunity to be heard as well as an opportunity to review the decision of the secretary before the association's board of control in itself recognizes the vital distinction between the administration of this character of a rule and the rules mentioned by way of comparison in the majority opinion.

The foregoing considerations, applicable alike to all voluntary associations, are sufficient to warrant a correction of the injustice here involved. There is, however, in addition, a special justification for judicial interference with maladministration of this particular rule. This arises upon consideration of the field in which this association operates and its monopolistic influence upon highschool athletics in this state.

The record discloses that practically all of the highschools of this state belong to this one association, thus, ineligibility to participate in contests between member teams practically bars the ineligible scholar from participating in highschool athletics, or, to say the least, greatly restricts his activity. Athletics are no longer considered a mere recreation for students, but, on the contrary, are recognized as an integral part of our educational system. As was stated by the Arizona court in Alexander v. Phillips, 254 P. 1056:

"As with the spiritual, so in the early days of our nation, it was not generally considered necessary for the public schools to attend to the physical education of the child. When 80 to 90 per cent. of our population was composed of farmers, it was universally thought the growing generation found an abundance and a superabundance of physical training in the manifold duties of the home. But, with our modern industrial civilization, a great change has come over the land. At present over half our population is urban, with little or no chance for physical training for children in the home, and with the increase of human knowledge we are beginning to realize that the work of the farm and home even in the rural districts does not generally give a complete or properly rounded physical development. For this reason the new generation of educators has added to the mental education, which was all that was given by the public schools of the past, the proper training of the body. * * * For the foregoing reasons, we are of the opinion (1) that physical education is one of the branches of knowledge legally imparted in the Phoenix union high school: that competitive athletic games and sports in both intra and inter mural games are legal and laudable methods of imparting such knowledge."

Thus, when a high school student of this state is, by action of the association, forbidden to participate in athletic contests, his opportunities are greatly restricted in an important field recognized to be an integral part of his education. The importance of exercising a superintending judicial control over such an association is further enhanced by the fact that this association operates and to a great extent controls a field in which the state as a body politic is primarily interested. The Legislature provides for the public school system of the state under constitutional mandate. The courts may well shirk a corollary duty by refusing to interfere with a voluntary association which in one important field has so entwined itself with the public school system as to exercise a controlling influence.

As to the particular form of legal remedy available for the redress of the wrong, I shall but briefly allude. Mandamus is the one here chosen. In 19 R. C. L. 1254, it is pointed out that a division of authority exists as to whether the appropriate action is in equity or by mandamus. The text reads:

"In the case of unincorporated association, some authorities hold that the only remedy for the unauthorized expulsion of a member is in equity, either to restrain the threatened expulsion or to restrain the officers and members from excluding the expelled member, and from interfering with his enjoyment of prestige of the association. In other jurisdictions, however, a writ of mandamus will issue, even in the case of unincorporated associations.

This court has generally adopted a liberal view upon procedural matters. No reason is apparent for a departure in policy in this case. Since relief is not denied by my associates upon the procedural question, further discussion of this point is unwarranted.

For the reasons stated, I respectfully dissent.