WILLIAM SULT, as Principal of the Palmetto High School, v. J. W. GILBERT, as President of the Florida High School Athletic Association, *et al.*

3 So. (2nd) 729
En Banc
Opinion Filed August 1, 1941
Rehearing Denied Sept. 15, 1941

*Alvan B. Rowe,* for Appellant;
*Henderson & Franklin,* for Appellees.

TERRELL, J.—Florida High School Athletic Association is a voluntary organization of all high schools recognized as such by the State Department of Education. Membership in the association is exercised by

the supervising principal of each high school and its affairs are regulated by a Constitution, the officers required being a president, two vice presidents, a legislative council, executive committee, and executive secretary. The aim of the association is the improvement of the mental, moral, and physical welfare of the student by means of clean competitive sports.

In June, 1939, Palmetto High School entered into an agreement with Sarasota High School to play a game of football in November, 1939. In April, 1940, Sarasota High School severed athletic relations with Palmetto High School and a controversy arose as to whether a football game would be played between them in November, 1940. On the reverse side of the 1939 contract, the following was inserted:

"It is hereby understood that Sarasota High School will give Palmetto High School, for the year 1940, one of the following contracts:

"A. The same contract as this year;

"B. A $200.00 guarantee;

"C. A fifty-fifty split on the gate.

"(Palmetto to have the choice of accepting one of the above.)"

Article IX, Constitution of the Association, provides:

". . . A contract shall not be cancelled except by the mutual consent of the parties to the contract. In case of failure of the parties to reach agreement concerning cancellation the matter shall be referred to the executive secretary for adjudication. His decree, or the decree of the executive committee in case of appeal, shall be final, and the provisions of the decree shall be carried out by the parties to the contract. Failure to comply with the decision of the executive secretary

or executive committee on the part of either member school signing the contract, within thirty days, shall result in the suspension of the school so failing from the Association for a period of one year."

The two high schools could not reconcile their differences so the controversy as to the 1940 game was submitted by the principal of Palmetto High School to the executive secretary of the Association as provided in Article IX of the Constitution above quoted. After due consideration, the executive secretary held that the contract between the two high schools provided for but one game of football which had been played in 1939 as per agreement, that the terms written on the reverse side of the contract were doubtless intended to provide for an additional game in 1940 but not having been covered in the contract as originally executed or by subsequent provision, it could not be enforced. Palmetto High School accepted the finding of the executive secretary and did not appeal to the executive committee.

In October, 1940, Palmetto High School filed its bill of complaint in the circuit court praying that Sarasota High School be required to play football with it in November, 1940. The chancellor ruled that the contract between them could not be enforced as to the 1940 game by specific performance.

Immediately after filing this suit, the executive secretary cited Palmetto High School to show cause why it should not be suspended from the Association; after a full hearing the executive secretary held that refusal of Palmetto High School to accept his decision as to the 1940 game with Sarasota and the institution of court proceedings to compel the game was a violation of the rules of the Association for which he would

be bound to suspend it for a period of one year. On appeal and full hearing by both sides, the executive committee affirmed the decision of the executive secretary.

Palmetto High School then filed its bill of complaint in which it named the Florida High School Athletic Association, Sarasota High School, Winter Haven High School, and Bradenton High School as defendants. The bill prayed that said high schools be required to play football games with complainant in 1940 as per schedule or contract with them and that complainant be not suspended from membership in the Florida High School Athletic Association.

The court entered a temporary restraining order enjoining the suspension of Palmetto High School from the Association and requiring Winter Haven and Bradenton High Schools to perform their agreements to play football with complainant. The latter part of the order was promptly obeyed and thereafter a motion to dissolve the injunction and dismiss the bill of complaint was granted. The court further found that the suspension order was regular and in compliance with the Constitution of the Association and should not be disturbed. This appeal is from the order of dismissal.

The question presented is whether or not the order of the executive secretary as affirmed by the executive committee suspending Palmetto High School from the Florida Athletic Association for a period of one year is valid and enforceable.

Palmetto High School contends that the order of suspension was invalid because there was no authority on the part of the executive secretary or the executive committee to adjudicate the contract between it and

the Sarasota High School, that it had a valuable property right in said contract which it could resort to the courts to enforce, and that the Constitution of the Florida High School Athletic Association does not authorize suspension for the violation of its regulations.

Examination of the Constitution of the Florida Athletic Association discloses that it provided for an executive secretary and authorizes him to direct the affairs of the Association, to investigate alleged violations of the rules of the Association, and impose penalties for their violation. He is further required to review all controversies between members of the Association and adjudicate them subject to approval by the executive committee if appealed to it. Article IX of the Constitution as quoted herein provides how such contracts may be construed and determined.

Section 10 of the Constitution provides that the decisions of the executive secretary and the executive committee shall be accepted in good faith by those affected and that to refuse to do so or to treat the decisions with contempt shall be ground for suspension for a period of one year. The chancellor found that the provisions of the Constitution were substantially complied with and that the suspension brought in question was in all respects regular and in compliance with the Constitution.

The law is well settled that the Constitution and by-laws of a voluntary Association when subscribed or assented to by the members becomes a contract between each member and the Association and if they so provide a member may be expelled for insubordination to the Association. Grand Lodge K. of P. v. Taylor, 79 Fla. 411, 84 So. 609; Levy v. Magnolia Lodge No. 29, I. O. O. F., 110 Cal. 297, 42 Pac. 887.

But appellant contends that it had a valuable property or contractual right at stake in its contract with Sarasota High School that it had a right to resort to the court to protect. The law is settled in this State that the courts will not take cognizance of a case arising from the expulsion of a member of a voluntary Association unless some civil or contractual right is involved. Grand Lodge K. of P. v. Taylor, *supra*. If appellant is correct on this contention, it should not have been suspended.

Civil or contractual rights are distinguishable from natural or political rights in that they are such as the law will enforce. They have reference to the enjoyment of such guaranties as are contained in the Constitution or statutes. If not repealed by legal fiat, natural rights exist regardless of municipal or other law on which civil rights always depend for enforcement.

The Constitution of the Florida High School Athletic Association shows that it is a voluntary nonprofit organization. When Palmetto High School was a member of the Association, it had a right to make contracts with member schools for athletic meets. The loss of this right was all that was lost by the suspension and that being the case, we find no showing of a contractual or property right that would authorize the courts to interfere. It was purely an internal affair of the Association and there is no showing of mistake, fraud, collusion, or arbitrariness in the proceedings.

We do not overlook the contention of appellant that it should not be penalized for going into court to assert what it considered to be a material property or contract right. In fact, at the oral argument, it was

virtually agreed that the question presented was whether or not the act of going into court constituted a disregard of the decision of the Florida Athletic Association.

If we were answering this question in response to impulse or predilection, we would have to say no, but the Constitution of the Association provides the answer in that it makes the decision of the executive committee final and requires it to be acquiesced in good faith by all member schools. The appellant subscribed to and agreed to abide by the Constitution. We think that under all the circumstances the penalty in this case was too harsh but was not more than was authorized.

We have examined the cases relied on by appellant but we do not think they rule the case at bar. They arise from constitutional or factual conditions different from those presented in this case. The Constitution in this case was substantially complied with so the judgment is affirmed.

Affirmed.

BUFORD, THOMAS and ADAMS, J. J., concur.

BROWN, C. J., and CHAPMAN, J., dissent.

CHAPMAN, J., dissenting.—One of the essential questions to be determined on this appeal is whether or not the Florida High School Athletic Association, functioning under its Constitution adopted under date. of March 29, 1938, with subsequently adopted amendments and by-laws, possessed the authority or power to suspend for a period of one year one of its members, viz.: the Palmetto High School, from membership therein? The alleged offending school, when granted membership, consented to and agreed to con-

form to and abide by the Constitution as amended and then existing by-laws.

Pursuant to a contract, the Palmetto High School and the Sarasota High School, in the Fall of 1939, played a football game. It was the view of the Palmetto High School that a football game would be played with the Sarasota High School during the Fall months of 1940 under the provisions of the contract under which the 1939 game was played. The controverted point was submitted to the executive secretary of the Florida High School Athletic Association, and, as provided for by its Constitution and by-laws, the executive secretary ruled that a contract between the schools for a football game in the Fall of 1940 did *not* exist.

The Palmetto High School asserted that a contract existed between it and the Sarasota High School to play a game of football during the Fall months of 1940, being the same provisions of the contract under which the 1939 game was played. Suit was filed in the Circuit Court of the Twelfth Judicial Circuit for specific performance against the Sarasota High School. The issues made were duly considered and the judge of the circuit court held that a contract to play the 1940 football game between the two schools did not exist, but at the most was nothing more than a gentlemen's agreement to play. The executive secretary suspended the Palmetto High School from membership in the Florida High School Athletic Association, and used the language, viz.:

"On September 19 you submitted to me a copy of a document which you claimed to be a contract between Palmetto and Sarasota for a football game on November 11. Under date of September 23, I wrote you

that, in my opinion, as executive secretary, a contract did not exist. You accepted this as a ruling under date of October 7 and wrote me to the effect that my verdict was in error and contrary to ruling by a circuit judge whom you had consulted. You did not offer to submit additional evidence, nor did you ask for an appeal to the executive committee. Upon advice of counsel, as you stated in the meeting today, the Palmetto school with you as principal, brought suit in the circuit court to compel Sarasota to play the game. This suit was heard on Friday, November 1, and Saturday, November 2.

"The Florida High School Athletic Association provides ample machinery for appeals from the decisions of the executive secretary, which machinery you neglected to use, preferring to appeal to the circuit court. Such action on the part of the Palmetto High School, with you as principal, constitutes contempt for the regulations of the Florida High School Athletic Association and the rulings of the executive secretary. Therefore, as provided by Section B of Article 10 of the Constitution, it becomes my duty to suspend the Palmetto High School from the Florida High School Association for a term of one year.

I understand that the Palmetto High School wishes to take an appeal from my decision to the executive committee. Therefore, I will try to make every effort to secure a meeting of the executive committee on Tuesday, November 12, at Tampa or Palmetto. I will notify you by wire immediately as to the time and place."

On appeal to the executive committee the order of suspension previously entered by the executive secretary was affirmed.

Thereafter suit was filed in the Circuit Court of Manatee County against the several officers of the Florida High School Athletic Association, and the prayer of the bill of complaint sought to temporarily and permanently restrain the enforcement of the suspension order on the ground that the same was illegal, improper, unlawful, irregular and violated property rights vouchsafed by the fundamental law.

The lower court sustained a motion to dismiss the bill of complaint because the same was without equity. Other grounds, however, appear in the motion to dismiss.

The contract under which the Palmetto High School and the Sarasota High School played the 1939 game provided that the Palmetto High School had the option of a $200.00 guarantee or in lieu thereof an equal division of the gate receipts, and the contract was non-cancellable. The bill of complaint in the case at bar alleges that the same contract would control the 1940 games between the two teams and that the Palmetto High School had a lawful right to have the courts decide the controversy. The institution of the suit in the lower court was to determine the controversy between the two schools and out of which grew the suspension order complained of.

Section 4 of the Bill of Rights of the Constitution of Florida provides that all courts in Florida shall be open, so that *every* person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay. Section 1, *supra,* provides that all men are equal before the law and have certain inalienable rights, among which are

enjoying and defending life, and liberty, acquiring property and pursuing happiness. . . .

The rule appears to be that the courts will take cognizance of cases arising from the wrongful expulsion from membership of a member of a voluntary organization when property rights of the expelled member are involved, but upon questions of doctrine and policy and conditions and qualifications of membership the society is the sole judge. See Grand Lodge K. of P. v. Taylor, 79 Fla. 441, 84 So. 609. The above is in accord with the holdings of many other jurisdictions. Equity will reinstate a member where the association, in suspending or expelling him, acted unfairly, or in bad faith, or beyond its powers, and not in accordance with its laws, *or the law of the land.* See 7 C. J. S. 68; 7 C. J. 1116 to 1119; 4 Am. Jur. par. 18, pp. 466-7.

On the issues presented the lower court held that a contract to play the 1940 game with Sarasota High School did not exist. There is nothing in the record to show that the suit to determine the issue was not brought in good faith. The law of the land provides a forum to settle such controversies and to suspend the Palmetto High School from membership in the Florida High School Athletic Association because it elected to submit the controversy involving a contract guaranteeing it $200.00 or one-half of the gate receipts to the court for a decision as provided for by the fundamental law is not such conduct as authorizes suspension of membership and such suspension order is arbitrary, unlawful and not authorized by the Constitution and by-laws of the Florida High School Athletic Association.

The order dismissing the bill of complaint is reversed with directions for further proceedings in the lower court not inconsistent with this opinion.

BROWN, C. J., concurs.