237 So.2d 652

Herman SCOTT, Individually and as Executive Secretary of the Alabama High School Athletic Association, et al.

v.

Bobby Wayne KILPATRICK, a minor who sues by his father and next friend, James Kilpatrick.

6 Div. 765.

Supreme Court of Alabama.

June 18, 1970.

Oakley Melton, Jr., Montgomery, and Bankhead, Petree & Savage, Jasper, for appellants.

No brief for appellee.

HARWOOD, Justice.

Bobby Wayne Kilpatrick, a minor suing by his father and next friend, obtained a temporary injunction against Herman Scott, individually, and as Executive Secretary of the Alabama High School Athletic Association (hereinafter referred to as AHSAA), and also the three members of the Fifth District Board and certain named members of the Central Board of Control of the AHSAA, individually and

as members of the two boards, enjoining them from enforcing a ruling of the Fifth District Board, issued 17 September 1969. This ruling declared Bobby Wayne Kilpatrick ineligible to play football for Cordova High School pending a final determination by the Central Board of Control, and a final hearing on the merits by the court.

The respondents Scott, et al., duly filed a motion to discharge, and a motion to dissolve, the temporary injunction.

A hearing was had upon these motions, the matters being submitted upon the sworn bill, the sworn answers of the respondents, and affidavits and exhibits offered by the respective parties.

Thereafter, the court entered an order in effect denying the motion to discharge and to dissolve the temporary injunction. It was further ordered that the complainant enter into an injunction bond in the amount of $300.00, as provided for in Section 1041, Title 7, Code of Alabama 1940.

The respondents have perfected this appeal from such order.

The pleadings, affidavits, and exhibits, show that in the Fall of 1968, the complainant was living at the home of his parents in the Martin School District and attending the Martin High School.

In the Spring of 1969, on his own accord, he transferred to Parrish High School, which was outside the Martin School District. He commuted to Parrish School each school day.

In August 1969, the complainant and his parents moved to Cordova, and in September the complainant transferred from Parrish High School to Cordova High School.

On 30 August 1969, an Eligibility Enrollment List was furnished the AHSAA by the principal of the Cordova High School and in reference to the complainant, it was indicated:

"This boy went to Martin during the first semester of 1968–69 term. *He moved to Parrish in Jan. 1969.* In Aug. 1969 his family moved to Cordova." (Italics ours.)

On the basis of this information, respondent Herman Scott orally informed officials of the Cordova High School that he saw no problem as to complainant's eligibility to play football for Cordova High in 1969.

The complainant did play as a member of the Cordova football team in the first game of the 1969 season, which was against Parrish High School.

After the game, a protest as to the eligibility of the complainant to play for Cordova was lodged with the respondent Herman Scott, by the Parrish High football coach. The basis of the protest was that the complainant had transferred from his home district school (Martin High School) to Parrish High School for the 1969 Spring Semester while his family lived in the Martin High School District.

This was the first information Scott had that complainant had not in fact moved to the Parrish High School District, but had only commuted there from his family home in the Martin High School District.

Investigating the protest, Mr. Scott found the facts to be as set out above. He thereupon, as Executive Secretary of AHSAA declared the complainant ineligible to play on the Cordova High School football team for the year 1969, because of the provisions of Rule 1, Sec. 11, Exception 4, page 99 of the Rules of the AHSAA. In parts pertinent to this review Exception 4 reads:

"A pupil will be ineligible for one year if he transfers to a school where his parents do not reside. If a boy is living at home and commuting to attend a school that does not serve the area in which he lives, he cannot return to his home school and become immediately eligible. It will be necessary for him to attend his home school for one year before becoming eligible."

The bill recites that "thereafter the complainant was told he could appeal the ruling (Scott's) to the Fifth District Board as aforesaid and did in fact appeal the same * * *."

The Board upheld Scott's ruling. So far as the record discloses written notice of the Board's decision was sent only to the Principal of the Cordova High School, and not to the complainant. It must be assumed that the appeal to the Board was processed by Cordova High School since complainant was not a member of AHSAA.

Certainly it is clear from the record that Cordova High School appealed the Board's ruling to the Central Board of Control of the AHSAA. A full hearing was then had by the Central Board, with the Principal and the Football Coach of Cordova High School being present and presenting their contentions as to why the complainant was not ineligible as found by the Executive Secretary (Mr. Scott), and the Fifth District Board.

The AHSAA is a voluntary association of various high schools of this state. Membership is on a school, or institutional basis. There are no individual members. The association has a constitution and by-laws, and representatives of the member schools have promulgated rules, which govern the member schools. Among other things, these rules look toward regulating the athletic programs of the member schools, and to this end have set out standards of eligibility for students who are to play on the athletic teams of the member schools. These standards pertain to age of the students, scholastic requirements, residence of the student, etc.

It is obvious that the purpose of the rule with which we are here concerned, that is the residence requirement of students, is to prevent the transfer of a student athlete from one school to another without regard to the student's home school district, whether such transfer be voluntary on the student's part, or the result of enticement or recruitment. It cannot be argued but that the rule tends to maintain the truly amateur character of high school athletics.

While we have found no Alabama cases in point, the courts of our sister states have considered virtually similar situations to the one here presented, and so far as our research discloses, the conclusions in all of these cases have been of one accord. The principles developed in these cases are:

Participation in high school athletics is an extracurricula activity subject to regulations as to eligibility. Engaging in these activities is a privilege which may be claimed only in accordance with the standards set up for participation.

The member schools are in better position to promulgate rules governing participation in high school athletics than anyone else, and are fully cognizant of the reasons underlying such rules.

[2] If officials of a school desire to associate with other schools and prescribe conditions of eligibility for students who are to become members of the school's athletic teams, and the member schools vest final enforcement of the association's rules in boards of control, then a court should not interfere in such internal operation of the affairs of the association. See Tennessee Secondary School Athletic Association, et al. v. Cox, et al., Tenn., 425 S.W.2d 597; Morrison v. Roberts, 183 Okl. 359, 82 P.2d 1023; Robinson v. Illinois High School Association, 45 Ill.App.2d 277, 195 N.E.2d 38; State ex rel. Ohio High School Athletic Association v. Judges of the Court of Common Pleas, 173 Ohio St. 239, 181 N.E.2d 261; Sult v. Gilbert, 148 Fla. 31, 3 So.2d 729; State ex rel. Indiana High School Athletic Association v. Lawrence Circuit Court, 240 Ind. 114, 162 N.E.2d 250; Starkey v. Board of Education of Davis County School District, 14 Utah 2d 227, 381 P.2d 718.

Of course, if the acts of an association are the result of fraud, lack of jurisdiction,

collusion, or arbitrariness, the courts will intervene to protect an injured parties rights. See 6 Am.Jur.2d., Associations and Clubs, Sec. 27, p. 453.

Clearly no fraud, collusion or lack of jurisdiction was present in the action of the AHSAA in the premises. Nor was there any arbitrariness in that only a rule of long standing was enforced.

We gather from his decree that the Chancellor apparently was impressed by the fact that Mr. Scott at first informed Cordova High that he saw no problem as to the eligibility fo the complainant to play at Cordova. However, this observation by Mr. Scott was on the basis of the information supplied by Cordova High School that, "He (complainant) moved to Parrish in 1969." After the protest by Parrish High School as to complainant's eligibility, it was disclosed that complainant had not moved to the Parrish school district, but commuted there from his home in the Martin school district. It would appear that under these conditions Mr. Scott was justified in his actions.

The Chancellor found that "the petitioner's right to compete for an opportunity to play ball in this cause involves a property right in that it is a well known fact that a good football player has an opportunity for a scholarship in many colleges of this state, and to declare petitioner ineligible to play football denies him an opportunity to compete for such scholarship. The Court in this cause distinguishes between the right to actually play football for a team and the right to compete for a position on the team, the right to actually play for a team which may be a privilege, but the right to compete for a position on a team certainly is a right due any male student."

Any basis for distinguishing between actually playing on a team, and competing for a position on the team eludes us. Each is dependent on a student's eligibility to participate in an extracurricula activity of the school.

But be that as it may, the facts show that the complainant was a junior in high school at the time he was ruled ineligible. It was also shown that the National Collegiate Athletic Association and the Southeastern Conference prohibit colleges from offering football scholarships to high school players until they have completed their senior year of participation in football in high school.

■ It has been recognized a "chance" may have a pecuniary value where common sense would furnish a reasonable inference of probability of success. In this sense a chance would be a property right. See Western Union Tel. Co. v. Tatum, 35 Ala. App. 478, 49 So.2d 673. Yet, the existence of a property right, like the existence of damages, cannot rest upon vague speculation.

■ We hold that the speculative possibility of the complainant acquiring a football scholarship as shown under the facts presented furnishes no basis for a finding that the complainant was deprived of any property right. Further, his predicament resulted from his own act in rendering himself ineligible.

■ The Chancellor found that the complainant had not been notified of the final hearing before the Central Board of Control, and therefore had no opportunity to appear at such hearing. The appeals to the District Board and to the Central Board were processed by Cordova High School. The matter pertained to the internal affairs of the AHSAA. Only the school was a member of that association. Cordova, and all other members of the association, had vested the final enforcement of the rules of the association in the District Board and the Central Board. The complainant was not a member of the association. He had no standing in the proceedings. The fact that he was not notified of the hearing before the Central Board is of no consequence.

It is our conclusion that the Chancellor erred in denying the respondents' motion to dissolve the temporary injunction theretofore issued. The decree is due to be reversed, and we are hereby entering an order dissolving the injunction issued by the court below.

Reversed and rendered.

LIVINGSTON, C. J., and LAWSON, MERRILL and McCALL, JJ., concur.