446 So.2d 1 (1984)
ALABAMA HIGH SCHOOL ATHLETIC ASSOCIATION
v.
Larry ROSE, a minor who brings this action through his father and next friend, William Rose.
82-1256.
Supreme Court of Alabama.
January 6, 1984.
Rehearing Denied February 3, 1984.
Melton & Espy, Montgomery, George Ford, Gadsden, for appellant.
Jack Floyd, Gadsden, for appellee.
JONES, Justice.
Plaintiff Larry Rose, a minor, initiated these proceedings on August 24, 1983, by and through his father and next friend, William Rose. Named as Defendants were the Alabama High School Athletic Association (AHSAA); Emma Sansom High School; Dr. Fred Taylor, as Superintendent of the Gadsden City Board of Education; and the Gadsden City Board of Education.
The initial complaint alleged that Rose had been declared ineligible to participate as a student athlete at Emma Sansom High School for the 1983-84 school year, and sought an order enjoining Defendants from enforcing the ineligibility ruling. All Defendants filed motions to dismiss. The trial court granted the motions, with the exception of that of AHSAA, ruling that "the Complaint in this case will be heard only on the allegations of arbitrariness, collusion or fraud."
Subsequent to a hearing, the trial court, on September 7, 1983, temporarily enjoined AHSAA from enforcing its ineligibility ruling against Rose. On September 9, 1983, the trial court denied AHSAA's motion to stay the preliminary injunction, and AHSAA filed with this Court its notice of appeal and a petition for writ of mandamus or, in the alternative, for stay of preliminary injunction. On September 20, 1983, we granted AHSAA's petition for writ of *2 mandamus, and ordered that the preliminary injunction in favor of Rose be dissolved. On October 5, 1983, on consideration of Rose's application for rehearing, we vacated that order of September 20, and reinstated the preliminary injunction. Today we have quashed the writ issued on September 20, 1983. This opinion is addressed to the appeal by AHSAA. We emphasize that the only issues presented on this appeal are the trial court's jurisdiction to issue a preliminary injunction and, assuming that jurisdiction, the propriety, vel non, of the interlocutory order granting a preliminary injunction.[1]
We affirm.

FACTS
We recite the following factual findings of the trial court:
"1. The plaintiff is a minor sixteen years of age. William Rose is the father, natural guardian and custodian of the plaintiff. The plaintiff has been enrolled as a student at Emma Sansom High School in Gadsden, Alabama, since September 10, 1982. Plaintiff will enter the 11th grade at Emma Sansom High School on the first day of the school year 1983-84. The plaintiff has remained a student of Emma Sansom High School all during the 1982-83 school year.
"2. The plaintiff participated in the football program of Emma Sansom High School as a student athlete during the 1982-83 school year. Prior to his participation the defendant AHSAA ruled that the plaintiff was eligible to participate in the football program of Emma Sansom High School for the 1982-83 school year.
"3. The plaintiff has completed one year's attendance at Emma Sansom High School. The plaintiff's parents have their permanent residence in the Emma Sansom High School zone of the Gadsden School District.
"4. During the 1982-83 school year, and during the summer months following the same, the Executive Director of the defendant AHSAA received repeated telephone calls from three local high school coaches in an effort to convince the Executive Director of the defendant AHSAA that the plaintiff was ineligible for athletic participation; that based upon the assertion of the coaches, and without making further investigation or inquiry, the Executive Director of AHSAA became convinced that the plaintiff was ineligible. When the Executive Director of AHSAA was first contacted by Emma Sansom High School and by the plaintiff concerning his eligibility, the Executive Director of AHSAA announced that he had made his decision that the plaintiff was ineligible, and although said Executive Director allowed the plaintiff to journey to Montgomery to discuss the matter, announced that he was 98% sure that his decision would be to declare the plaintiff ineligible. Without further investigation, the defendant AHSAA, through its Executive Director, issued a ruling on August 3, 1983, that the plaintiff was ineligible to participate as a student athlete at Emma Sansom High School for the 1983-1984 school year, on the grounds that the plaintiff's family move into the Emma Sansom school zone in September, 1982, was not a bona fide move or change of residence because the plaintiff's parents did not remain there for six months or more after the move.
"5. Thereafter, Emma Sansom High School through its principal, James Gidley, appealed the ruling of the Executive Director of defendant AHSAA to the Sixth District Athletic Board of the defendant AHSAA, which Board is empowered to hear, de novo, appeals from the ruling of the Executive Director.
"6. That prior to the appeal hearing before the Sixth District Athletic Board, which was to be a de novo appeal hearing, the Executive Director of the defendant AHSAA contacted personally two of the four members of the Sixth District appeal board, discussed the plaintiff's case with *3 them, and received a commitment from said two Board members that they considered the plaintiff ineligible and that they would so rule after the hearing, said decision being made by said two Board members before any evidence had been presented to them at the hearing. The hearing before the Sixth District Athletic Board lasted approximately 45 minutes. A third member of the Sixth District Athletic Board was not present when the hearing began but came into the meeting after some 30 minutes of testimony had expired, and yet the third member of the Athletic Board sat in deliberation in the plaintiff's case with the other Board members and joined with the other Board members in a unanimous decision against the plaintiff and his eligibility.
"7. At the hearing of the Sixth District Athletic Board, the Executive Director of defendant AHSAA appeared at the hearing as the proponent to substantiate his ruling. After the evidence and facts had been presented to the Sixth District Athletic Board, the Board went into closed session to deliberate its decision. At the time the Board went into its deliberation, the Chairman of the Sixth District Athletic Board required the plaintiff, representatives of Emma Sansom High School, and all other interested parties to leave the room; however, the proponent Executive Director of the AHSAA remained with the Athletic Board during its deliberations, entered into the deliberations and discussions of the Board, spoke in favor of his position of ineligibility, and attempted to influence the Board to sustain his position. The Executive Director of the defendant AHSAA attempted to influence the Board and denied the plaintiff his right to an impartial, unbiased decision. The Executive Director of defendant AHSAA is a dominating force in athletic circles in Alabama and exerts great influence over coaches and member schools, and exerted influence over the deliberations and members of the Sixth District Athletic Board in its decisions in the plaintiff's case.
"8. That the actions of the Executive Director of defendant AHSAA, the actions of defendant AHSAA, and the actions of the Sixth District Athletic Board denied the plaintiff a fair and impartial hearing or decision, and denied the plaintiff his right to due process under law. The acts and decisions of the defendant AHSAA, its Executive Director, and the Sixth District Athletic Board were the result of collusion and arbitrariness.
"9. That on September 10, 1982, the plaintiff and his parents moved from rural Etowah County into the Emma Sansom High School district. The plaintiff enrolled at Emma Sansom High School on September 10, 1982. The plaintiff's parents moved to Gadsden to reduce their living costs and so that the plaintiff's father would be close to his employment at Republic Steel Corporation. They moved into a home in the 2800 block of West Meighan Boulevard. The household furniture of the family was moved to the new residence; all members of the plaintiff's family resided in the new residence; the original residence in rural Etowah County was closed and was not used by the family. At the time of the move, the plaintiff's father was attempting to sell or lease the rural home on which the plaintiff's family owed a large monthly mortgage indebtedness payment. Shortly after moving to the new residence in Gadsden, Alabama, both the plaintiff's father and mother were laid off from their employment and the family had no income except unemployment compensation benefits. The economic conditions in Etowah County at the time were bad, and unemployment in Etowah County exceeded 20%. Because of the economic conditions the plaintiff's father was unable to sell or lease his former rural home, and he was required to continue to make the monthly mortgage indebtedness payments on the same. Because of financial hardship, it was necessary for the plaintiff's family to temporarily move from the home in the 2800 block of Meighan Boulevard, which move occurred on November 14, 1982. The move was a temporary one, and the plaintiff and his family resided with the maternal and paternal grandparents of the plaintiff in addition to partly residing in the old rural home. *4 The move into rural Etowah County was on a temporary basis for economic and financial reasons. During the time the plaintiff's family temporarily lived in rural Etowah County, the plaintiff remained a fulltime student at Emma Sansom High School.
"10. That the move of the plaintiff's parents to the City of Gadsden, Alabama, on September 10, 1982, was a bona fide move by said family."
Following its findings of fact, the trial court decreed:
"[T]hat a preliminary injunction be and the same hereby is issued to the defendant Alabama High School Athletic Association, its officers, member schools, agents, servants, employees, and attorneys, enjoining them from denying the plaintiff the opportunity of participating in the high school football program, season, and games of Emma Sansom High School for the 1983-1984 season, as a student athlete, and from enforcing the ruling of the defendant AHSAA of August 3, 1983, issued by its Executive Director, and the ruling of the Sixth District Athletic Board of defendant Alabama High School Athletic association of August 17, 1983, denying the plaintiff his eligibility to participate as a student athlete in athletic and football events and contests of Emma Sansom High School for the 1983-1984 season, and from imposing sanctions against the plaintiff or Emma Sansom High School, either jointly or severally, by way of forfeiture or otherwise of any game or contest in which the plaintiff participates, all until a final hearing in this cause."

DECISION
In Scott v. Kilpatrick, 286 Ala. 129, 237 So.2d 652 (1970), the Court stated:
"It is obvious that the purpose of the rule with which we are here concerned, that is the residence requirement of students, is to prevent the transfer of a student athlete from one school to another without regard to the student's home school district, whether such transfer be voluntary on the student's part, or the result of enticement or recruitment. It cannot be argued but that the rule tends to maintain the truly amateur character of high school athletics.
"....
"Participation in high school athletics is an extracurricular activity subject to regulations as to eligibility. Engaging in these activities is a privilege which may be claimed only in accordance with the standards set up for participation.
"The member schools are in better position to promulgate rules governing participation in high school athletics than anyone else, and are fully cognizant of the reasons underlying such rules.
"If officials of a school desire to associate with other schools and prescribe conditions of eligibility for students who are to become members of the school's athletic teams, and the member schools vest final enforcement of the association's rules in boards of control, then a court should not interfere in such internal operation of the affairs of the association. See Tennessee Secondary School Athletic Association, et al. v. Cox, et al., [221] Tenn. [164], 425 S.W.2d 597; Morrison v. Roberts, 183 Okl. 359, 82 P.2d 1023; Robinson v. Illinois High School Association, 45 Ill.App.2d 277, 195 N.E.2d 38; State ex rel. Ohio High School Athletic Association v. Judges of the Court of Common Pleas, 173 Ohio St. 239, 181 N.E.2d 261; Sult v. Gilbert, 148 Fla. 31, 3 So.2d 729; State ex rel. Indiana High School Athletic Association v. Lawrence Circuit Court, 240 Ind. 114, 162 N.E.2d 250; Starkey v. Board of Education of Davis County School District, 14 Utah 2d 227, 381 P.2d 718.

"Of course, if the acts of an association are the result of fraud, lack of jurisdiction, collusion, or arbitrariness, the courts will intervene to protect an injured [party's] rights. See 6 Am.Jur.2d., Associations and Clubs, Sec. 27, p. 453." (Emphasis added.)
The fact that the case law of this State is less than extensive in this area speaks well *5 of our entire system of amateur athletics those who coordinate as well as those who participate. One can only hope that a sudden and recent proliferation of challenges by participants and member institutions of AHSAA is not a foreboding of things to come. Athletics and athletes belong in their own arena. A courtroom is not the proper field of competition.
The traditional philosophy in areas such as that now before us is much like that associated with religious societies and other voluntary associationsa hands-off philosophy. In other words, it's their show; let them run it. See, e.g., In re Galilee Baptist Church, 279 Ala. 393, 186 So.2d 102 (1966). Even claimed violations of due process of law are viewed more liberally in favor of the association's authority to administer its own rules and regulations. Kubiszyn v. Alabama High School Athletic Association, 374 So.2d 256 (Ala.1979).
Likewise, as Kilpatrick and Kubiszyn indicate, the burden on the challenger to overcome the presumption favoring the Association's absolute authority in the conduct of its own affairs is a heavy one. We reaffirm the Kilpatrick test to the effect that the Court's jurisdiction in such matters is invoked when, and only when, the averments of fraud, collusion, or arbitrariness are supported by clear and convincing evidence; and the trial court's acceptance of jurisdiction will be affirmed only where its order makes an unequivocal factual finding of one or more of those narrow, restrictive grounds, founded upon clear and convincing evidence.
The ultimate issue before us, then, given the trial court's express finding of collusion, as allegedly perpetrated upon Rose by AHSAA and its executive director, is whether this jurisdictional requisite is amply supported by the evidence. After careful review of the findings of fact, tested against the testimony of record, we are convinced that the trial court's jurisdiction was properly invoked and that its order granting a preliminary injunction was an appropriate exercise of its discretionary function.
AFFIRMED.
FAULKNER, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and MADDOX, J., dissent.
MADDOX, Justice, (dissenting).
The lower court based its preliminary injunction, in part, on the following finding:
"8. That the actions of the Executive Director of defendant AHSAA, the actions of defendant AHSAA, and the actions of the Sixth District Athletic Board denied the plaintiff a fair and impartial hearing or decision, and denied the plaintiff his right to due process under law." (Emphasis added.)
This finding erroneously presupposed that a student athlete has a constitutional right to due process in the determination of his athletic eligibility by the AHSAA. As recognized in Scott v. Kilpatrick, 286 Ala. 129, 237 So.2d 652 (1970), and Mitchell v. Louisiana High School Athletic Association, 430 F.2d 1155 (5th Cir.1970), the privilege of participating in high school athletics is outside the protection of due process. Mitchell clearly so holds when it states as follows:
"For better or worse, the due process clause of the fourteenth amendment does not insulate a citizen from every injury at the hands of the state. `Only those rights, privileges and immunities that are secured by the Constitution of the United States or some Act of Congress are within the protection of the federal courts. Rights, privileges and immunities not derived from the federal Constitution or secured thereby are left exclusively to the protection of the states.' The privilege of participating in interscholastic athletics must be deemed to fall in the latter category and outside the protection of due process." (Emphasis added.)
Mitchell, supra, 430 F.2d 1155, 1157, 1158.
This holding in Mitchell has been consistently followed in numerous cases. See *6 Parish v. National Collegiate Athletic Ass'n, 506 F.2d 1028 (5th Cir.1975); Moreland v. Western Pennsylvania Interscholastic Athletic League, 572 F.2d 121, 123-24 (3d Cir.1978); Hamilton v. Tennessee Secondary School Athletic Ass'n, 552 F.2d 681, 682 (6th Cir.1976); Albach v. Odle, 531 F.2d 983, 984-85 (10th Cir.1976); and Walsh v. Louisiana High School Athletic Ass'n, 616 F.2d 152 (5th Cir.1980).
Scott also holds that a student-athlete such as Rose does not have a constitutionally protected due process right in the determination of his athletic eligibility by the AHSAA. In this connection, it was stated in Scott as follows:
"The Chancellor found that the complainant had not been notified of the final hearing before the Central Board of Control, and therefore had no opportunity to appear at such hearing. The appeals to the District Board and to the Central Board were processed by Cordova High School. The matter pertained to the internal affairs of the AHSAA. Only the school was a member of that association. Cordova, and all other members of the association, had vested the final enforcement of the rules of the association in the District Board and the Central Board. The complainant was not a member of the association. He had no standing in the proceedings. The fact that he was not notified of the hearing before the Central Board is of no consequence." (Emphasis added.)
Scott, supra, 286 Ala. 129, 133, 237 So.2d 652, 653.
Since Rose did not have a due process claim against the AHSAA, there is no legal basis to support the finding by the lower court that the action of the AHSAA Executive Director or District Board "denied the plaintiff his right to due process under law." The AHSAA could not deny Rose a constitutional right which did not exist. As stated in Walsh, supra:
"A student's interest in participating in a single year of interscholastic athletics amounts to a mere expectation rather than a constitutionally protected claim of entitlement. As decided in Mitchell, it falls `outside the protection of due process.' The district court properly denied the plaintiffs relief based on their due process claim."
Walsh, supra, 616 F.2d 152, 159, 160.
In National Collegiate Athletic Ass'n v. Gillard, 352 So.2d 1072 (Miss.1977), the Supreme Court of Mississippi held that in determining the eligibility of a college football player by the NCAA that the player did not have a due process right under either the State or Federal Constitution. In that case the Supreme Court of Mississippi followed and quoted from Scott v. Kilpatrick, supra, by the Supreme Court of Alabama. The Court concluded as follows:
"The basic decision of the case then is the simple statement that Gillard's `right' to engage in intercollegiate football is not a `property' right that falls within the due process clause of either section 14 of the Mississippi Constitution or the Fourteenth Amendment to the United States Constitution, both of which are identical. The reason for this principle is found in the following cases: Howard University, et al. v. NCAA, 166 U.S.App. D.C. 160, 510 F.2d 213 (1975); Parish, et al. v. National Collegiate Athletic Ass'n, 506 F.2d 1028 (5th Cir.1975); Associated Students, Inc., etc. v. NCAA, 493 F.2d 1251 (9th Cir.1974); Mitchell v. Louisiana High School Athletic Ass'n, 430 F.2d 1155 (5th Cir.1970); Oklahoma High School Athletic Ass'n v. Bray, 321 F.2d 269 (10th Cir.1963); Scott v. Kilpatrick, 286 Ala. 129, 237 So.2d 652 (1970); Sult v. Gilbert [148 Fla. 31], 3 So.2d 729 (Fla.1941); Sanders v. Louisiana High School Athletic Ass'n, 242 So.2d 19 (La. 1970); State, ex rel. Missouri, State High School Activities Ass'n v. Schoenlaub, 507 S.W.2d 354 (Mo.1974); Tennessee Secondary School Athletic Ass'n v. Cox, 221 Tenn. 164, 425 S.W.2d 597 (1968)."
Gillard, supra, 352 So.2d 1072, 1081.
NOTES
[1] Appellate review by way of an appeal from an interlocutory order granting, or refusing to grant, an injunction is statutorily authorized by Code 1975, § 12-22-6.