PIERCE, Justice,
dissenting:
¶ 26. I dissent from the majority’s holding that R.T. has standing to challenge the eligibility decision of the Mississippi High School Athletic Association (MHSAA) in this instance. At the outset, the majority’s statement that the DeSoto County School District entered into a contract with MHSAA to allow MHSAA to decide whether its students are eligible to play high school sports is inaccurate. Apart from having no such signed instrument in the record before us, this statement misleads the reader as to what the MHSAA actually constitutes. MHSAA “is a private, voluntary nonprofit organization for public, private and parochial secondary schools that choose to join and participate in the organization.” (Emphasis added.) Each member school adopts the rules and interpretations contained in the MHSAA handbook. The rules and interpretations are developed by member school representatives to promote fairness in competition for the student athletes and to promote the general welfare of member schools in their relations with each other. In no way have MHSAA and its member schools conferred any “right(s)” upon students to compete or participate in athletic competitions. As this Court recognized in National Collegiate Athletic Association, v. Gillard, 352 So.2d 1072 (Miss.1977), Mississippi High School Activities Association, Inc. v. Farris, 501 So.2d 393 (Miss. *282 1987), and Mississippi High School Activities Association, Inc. v. Coleman, 631 So.2d 768, 774 (Miss.1994), students have no “right” or entitlement to participate in athletics as part of a public education. Rather, students are allowed the privilege to participate in athletics. And this “privilege ... may be claimed only in accordance with the standards set up for participation.” NCAA v. Gillard, 352 So.2d 1072, 1081 (Miss.1977) (quoting Scott v. Kilpatrick, 286 Ala. 129, 237 So.2d 652 (1970)).
¶27. Here, the standards set up for participation are developed by the member schools through member school representatives, which, I say again, form MHSAA. To this end, MHSAA regulates the standards of eligibility for students who choose to or attempt to play on athletic teams of its member schools.
¶ 28. One of the eligibility requirements instituted is that a student must attend school in the school district in which the student’s parent(s) are bona-fide residents. The purpose of this rule is to deter athletically motivated transfers and recruitment of students and promote fair competition among the member schools, keeping in mind the educational principle that participation in athletics is a privilege which should not take a dominant role over academics. MHSAA v. Coleman, 631 So.2d 768, 777-78 (Miss.1994).[28] If a school violates the rules it adopted by allowing a student who has been declared ineligible to participate in any interscholastic contest, the school will be sanctioned by its fellow members through MHSAA. To be sure, MHSAA also has a rule that, even if a school obtains a court order enjoining the MHSAA from making an eligibility ruling, the school will be sanctioned in the event such order is reversed or determined to be unjustified. This provision is necessary to assure that MHSAA’s anti-recruitment regulations will not be rendered pointless by gamesmanship played in the courts, through use of injunctions and the like.
¶ 29. In reaching the conclusion that R.T. has standing to challenge MHSAA’s eligibility decision in this instance, the majority fails to mention that the chancery court merely found that the Trails “have the right to have the court, following a trial on the merits, determine whether MHSAA wrongly decided to revoke R.T.’s eligibility and/or failed to properly consider applying an undue hardship exception to the residency requirements under the circumstances of this case.” I can only assume that, in affirming the chancery court’s decision, the majority is presuming that will occur. But why would the Trails pursue the matter to resolution? R.T. is now playing college football, and he actually left Olive Branch after his junior season to return to his high school in Arkansas. Why would he now seek a judicial determination as to whether MHSAA wrongly decided to revoke his eligibility? The record does not indicate whether R.T. participated in Olive Branch’s football program after the chancery court issued a preliminary injunction in this matter. Assuming he did, if the Trails drop their suit against MHSAA, MHSAA’s ineligibility ruling still stands, and pursuant to Section 4.6 of the MHSAA rule book, sanctions against Olive *283 Branch will be implemented. But if, on the other hand, the Olive Branch football program, taking the “team” concept into consideration, did not allow R.T. to participate while this suit was pending, then sanctions will not be forthcoming.
¶ 30. This illustrates quite plainly to me why the member schools did not intend for student athletes to be third-party beneficiaries to the internal operation of affairs of MHSAA. Though elementary, it must be pointed out that MHSAA has no capability whatsoever to physically restrain a student athlete from participating in interscholastic activities. The only enforcement power MHSAA has is the power' to sanction for violations of its rules and regulations, which, again, the member schools through rotating school representatives institute. To expect a student athlete who a member school allows to participate in interscholastic competition after being ruled ineligible to pursue a claim to a judicial determination for the benefit of a member school is absurd.
¶ 31. In Scott, which this Court cited with approval in Gillard, the Alabama Supreme Court stated:
If officials of a school desire to associate with other schools and prescribe conditions of eligibility for students who are to become members of the school’s athletic teams, and the member schools vest final enforcement of the association’s rules in boards of control, then a court should not interfere in such internal operation of the affairs of the association.
Scott, 237 So.2d at 655 (citing Tenn. Secondary Sch. Athletic Ass’n, et al. v. Cox, et al., 221 Tenn. 164, 425 S.W.2d 597 (1968); Morrison v. Roberts, 183 Okla. 359, 82 P.2d 1023 (Okla.1938); Robinson v. Ill. High Sch. Ass’n, 45 Ill.App.2d 277, 195 N.E.2d 38 (Ill.App.1963); State ex rel. Ohio High Sch. Athletic Ass’n v. Judges of the Court of Common Pleas, 173 Ohio St. 239, 181 N.E.2d 261 (Ohio 1962); Sult v. Gilbert, 148 Fla. 31, 3 So.2d 729 (Fla.1941); State ex rel. Indiana High Sch. Athletic Ass’n v. Lawrence Circuit Court, 240 Ind. 114, 162 N.E.2d 250 (Ind.1959); Starkey v. Board of Education of Davis County School District, 14 Utah 2d 227, 381 P.2d 718 (Utah 1963)). I agree with Scott.
¶ 32. Again, students have no protected property interest or right to participate in athletics as part of a public education. Rather, participation in athletics is a privilege, and “[the] privilege ... may be claimed only in accordance with the standards set up for participation.” Gillard, 352 So.2d at 1081. MHSAA’s rules preclude student athletes and/or their par-entis) from either challenging an adverse eligibility determination or instituting a hardship determination. Unless it can be shown that the member schools, through MHSAA, have no authority to institute such a policy, we are powerless to order MHSAA to facilitate otherwise. Of course, rules cannot be instituted that contravene or infringe upon any constitutional or statutory right of a student, as provided by either federal or state law, and the MHSAA rule book safeguards that accordingly. No such question, however, is presented in this instance.
¶ 33. The majority’s opinion leaves questions which cannot be answered given the reasoning used to reach its holding, And, most disturbing, by elevating the privilege of participating in interscholastic athletics to a right, the' majority creates the ability for a student athlete to contest .any adverse decision that affects the student’s playing status, whether it involves team rule violations or coaching decisions.
WALLER, C.J., RANDOLPH, P.J., AND LAMAR, J„ JOIN THIS OPINION.

. In Coleman, we explained the following:
The stated purposes of the anti-recruitment regulation, to encourage and promote fair competition among the schools and to deter odious recruitment tactics, are legitimate. Requiring that a student attend a school located within the school district in which that student resides, before the student may participate in interscholastic athletic competitions, is rationally related to the state’s legitimate purpose. A classification scheme based on bona fide residence will clearly deter overzealous recruiting practices.
Coleman, 631 So.2d at 777-78.